IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JERALD S. ENSLEIN, ) | | |
| in his capacity as Chapter 7 Trustee ) | | |
| for Xurex, Inc., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | Case No. 16-09020-CV-W-ODS | |
| ) | | |
| GIACOMO E. DI MASE, et al., ) | | |
| ) | | |
| Defendants. ) | | |

## ORDER AND OPINION DENYING DEFENDANT DURASEAL PIPE COATINGS COMPANY, LLC'S MOTION TO DISQUALIFY POLSINELLI PC

Pending is Defendant Duraseal Pipe Coatings Company, LLC's ("DPCC") motion to disqualify Polsinelli PC due to conflicts of interest. Doc. #142. Plaintiff, in his capacity as Chapter 7 Trustee for Xurex, Inc., hired the law firm of Polsinelli PC as litigation counsel to pursue various claims related to Xurex's bankruptcy. DPCC, a creditor of Xurex, is named as a Defendant in this suit brought by Polsinelli's attorney on behalf of the trustee, their client. For the reasons stated below, the Court denies the motion.

The Court first considers whether DPCC's objection to Polsinelli's representation was waived by failing to timely bring the issue to the Court's attention. Next, the Court considers whether disqualification of Polsinelli is warranted on the facts presented in this matter. Local Rule 83.6(c)(1) of this Court adopts the Code of Professional Responsibility adopted by the Missouri Supreme Court. L.R. 83.6(c)(1). The Missouri Supreme Court has "emphasized that the public must have confidence in the integrity of the judicial system, and "every client has a right to expect the loyalty of his attorney in the matter for which he is retained." *Polish Roman Catholic St. Stanislaus Parish v. Hettenbach*, 303 S.W.3d 591, 597-98 (quoting *In re Carey*, 89 S.W.3d 477, 496 (Mo. banc 2002)) (internal citation omitted). The Court must not only "dispense justice" but

also "maintain the integrity of the judicial system." *Id.* (citations and internal quotations omitted).

The Court is mindful that "disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing." *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir. 1982) (citations omitted). "Disqualification often results in increased expenses, delay in resolution of the proceedings, and always deprives a party of its choice of counsel." *Kinzenbaw v. Case, L.L.C.,* No. C01-133LRR, 2004 WL 1146462, at *4 (N.D. Iowa May 20, 2004).

*A. Timeliness*

When faced with a motion to disqualify counsel, the Court may consider the timeliness of the motion. *Polish Roman Catholic St. Stanislaus Parish*, 303 S.W.3d at 599 (citation omitted). "A timeliness requirement ensures that the Rules of Professional Conduct are applied for their intended purpose, to regulate the conduct of counsel, and not as a weapon against an attorney's client." *Id.* The Eighth Circuit has held that waiver alone is a valid basis for the denial of a motion to disqualify. *Cent. Milk Producers Coop. v. Sentry Food Stores, Inc.,* 573 F.2d 988, 992 (8th Cir. 1978).

Accordingly, "[a] motion to disqualify should be made with reasonable promptness after the party becomes aware of the conflict to prevent the party from using disqualification as a strategic tool to deprive his opponent of counsel of his choice after substantial preparation has been completed." *Terre Du Lac Prop. Owners' Ass'n, Inc. v. Shrum,* 661 S.W.2d 45, 48 (Mo. Ct. App. 1983). A party who knowingly refrains from asserting a prompt objection to opposing counsel is deemed to have waived the objection. *Id.* The relevant timeframe for filing a motion to disqualify "commences when the moving party either first learned or reasonably should have learned of the…conflict of interest." *Polish Roman Catholic St. Stanislaus Parish*, 303 S.W.3d at 599 (citation omitted).

On January 29, 2016, Plaintiff, acting as bankruptcy trustee for Xurex, Inc., submitted to the Bankruptcy Court an Application to Employ Polsinelli P.C. as Special Litigation Counsel for Trustee Nunc Pro to July 26, 2015. Bankr. Case #14-43536-drd7, Doc. #95. DPCC received notice of this application more than once. Bankr. Case #14-43536-drd7, Docs. #95, at 7; 96; 99. In the application, regarding potential conflicts, an affidavit submitted by Plaintiff's counsel Todd Bartels disclosed "another attorney at Polsinelli previously represented creditor Duraseal Coatings Company LLC, in a review of a non-disclosure agreement with a third-party and in the drafting of an agreement between Duraseal Coatings Company LLC and debtor Xurex, Inc. not at issue in this matter but said representation ceased in November 2013." Bankr. Case #14-43536-drd7, Doc. #95, at 13.

On February 23, 2016, the Bankruptcy Court granted Plaintiff's application to employ Polsinelli as special litigation counsel. Bankr. Case #14-43536-drd7, Doc. #102. DPCC received notice of the Bankruptcy Court's approval of Polsinelli to act as special litigation counsel on Plaintiff's behalf. Bankr. Case #14-43536-drd7, Doc. #106. On March 11, 2016, Plaintiff's counsel sent DPCC and Defendant Duraseal Holding, S.r.L. a litigation hold letter, notifying them of potential litigation concerning the exclusive license, marketing, and distribution agreements and amendments thereto between the Duraseal entities and debtor Xurex. Doc. #147-2. On August 31, 2016, Plaintiff filed an adversary proceeding (Adversary Proceeding Case #16-04103-drd, Doc. #1). The reference to the Bankruptcy Court was withdrawn, and the matter is now pending before this Court.

When this matter commenced, DPCC was represented by Spencer Fane LLP ("Spencer Fane"), but it is unclear precisely when DPCC's engagement with Spencer Fane began. The Court believes DPCC was represented by Spencer Fane when Polsinelli issued the litigation hold letter in March 2016. Spencer Fane represented DPCC, Defendants Lee Kraus, Jose Di Mase, Giacomo Di Mase, and Duraseal Holdings S.r.L. until counsel moved to withdraw, citing non-payment of fees, on July 28, 2017. Docs. #64-65. The Court granted Spencer Fane's request. Doc. #66.

Defendants DPCC, Duraseal Holdings S.r.L., Jose Di Mase, Giacomo Di Mase, and Lee Kraus then proceeded pro se until November 29, 2017, when new counsel

entered an appearance in this matter on behalf of each of the above Defendants. Doc. #123. In December 2017, DPCC's counsel requested Duraseal files from Spencer Fane. Upon review of this information held by Defendants' prior counsel and accessible to Defendants, current counsel found invoices, marketing materials, and an engagement letter for work Polsinelli performed on behalf of DPCC from April to November 2013. After seeing these materials, DPCC's counsel inquired about the nature of the previous representation, and received copies of the DPCC client filed maintained by Polisnelli, as well as email communications between DPCC officers and two Polsinelli attorneys involved in the prior representation.

Although DPCC's current counsel is a relatively new addition to this matter and is first to move for disqualification of Plaintiff's chosen attorney, the Court finds any objection by DPCC, or any other party, to Polsinelli's involvement in this matter has been waived for failure to timely raise it. Starting with the trustee's application to employ Polsinelli, DPCC and its officers were aware of Polsinelli's involvement in this matter. Polsinelli attorney Todd Bartels's affidavit submitted as part of that application informed the Bankruptcy Court and the parties that DPCC had been represented by Polsinelli previously. DPCC and others were then made aware of potential litigation via the March 2016 litigation hold letter sent by Polsinelli and printed on Polsinelli letterhead. Polsinelli attorneys spoke with DPCC CEO Lee Kraus and his former counsel on at least one occasion in April 2016. DPCC and its officers were then named in the Complaint filed by Polsinelli on behalf of Plaintiff in October 2016. Any of these moments would have been an appropriate time to investigate and ask about potential conflicts stemming from Polsinelli bringing suit against a former client.

DPCC's counsel disputes whether anyone actually knew of Polsinelli's previous representation of DPCC. As a company, DPCC can obtain knowledge only through its agents and, under the well-established rules of agency, the knowledge of agents obtained in the course of their employment is imputed to the company. *Wandersee v. BP Prod. N. Am., Inc.*, 263 S.W.3d 623, 629 (Mo. banc 2008) (citation omitted). According to the Complaint, Jose Di Mase is the controlling shareholder of DPCC. Doc. #1-2, at 4. Giacomo Di Mase, Jose's son, was a member of the DPCC Board of Directors. Doc. #1-2, at 3. Although the Complaint is not specific, and the Court does

not know an exact date, Lee Kraus was a member of DPCC's Board of Directors, and served as its CEO "since late-2013." Doc. #1-2, at 4. The Court finds it difficult to believe the Di Mases and Kraus, as either board members or in Kraus's role as CEO, would not have known which law firms the company engaged for various matters or would not have received reports from employees detailing such information.

In further support of DPCC's allegation that no one actually knew of the potential conflict, DPCC notes Bruce Hollister and Jack Angel were "separated" from the company since November or December 2013. Hollister, DPCC's former Chief Financial Officer, and Angel, DPCC's former CEO, not only hired Polsinelli, but also served as contacts throughout the working relationship between DPCC and the firm. Eric DesRoche, Vice President of Business Development for the Automotive Division, was also aware of Polsinelli's engagement on a non-disclosure agreement in May 2013, but DPCC does not say when DesRoche's employment ceased.

The knowledge of a company's agent regarding matters within the agent's scope of employment and authority and to which his employment or authority extends is imputed to the corporate principal. *Iota Mgmt. Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 410 (Mo. Ct. App. 1987) (citation omitted). A company is charged with the knowledge of its officers and agents even if the officers or agents do not communicate the knowledge. *Id.* (citation omitted). There is no suggestion that Hollister or Angel did not have authority to engage Polsinelli on behalf of DPCC. DPCC now asks the Court to ignore DPCC's past dealings by its employees, senior level management, shareholders, or directors. The Court will not do so.[1]

DPCC's counsel maintains, for the first time in the reply brief, that Duraseal files were delivered to Spencer Fane from DPCC's former facility in October 2016, but sat

---

[1] Documents provided for *in camera* review indicate Defendant Len Kaiser, in his role as President & CEO and Chairman of the Board for Xurex, sought Polsinelli's assistance on a legal matter in November 2013. After Polsinelli stated it could not represent Xurex in that particular matter due to a conflict of interest, Kaiser was referred to counsel at a separate law firm. Kaiser is represented by that same counsel in this matter. The Court acknowledges that Kaiser may not move to disqualify Poslinelli because Kaiser did not have an attorney-client relationship with Polsinelli. However, that Kaiser and his counsel were aware, in 2013, of Polsinelli's representation is an additional factor the Court considers as it evaluates whether Polsinelli's potential conflicts could have been raised earlier.

untouched because previous counsel did not receive discovery requests until just prior to withdrawing in July 2017. Even if previous counsel did not investigate Polsinelli's involvement in the matter, or review any hard-copy files retrieved from DPCC's former facility, discovery has been ongoing in this matter since June 2017. The Di Mases, in their individual capacities and as representatives of both Duraseal entities, were served discovery requests in July 2017. In responding, or failing to respond, to Plaintiff's discovery requests, the Di Mases apparently failed to investigate whether previous counsel still had any company documents, or what the contents of any files may be. Indeed, it appears no one requested the documents until new counsel was hired. The Court finds there was ample time in which an investigation into a potential conflict of interest could have, and should have, been conducted.[2]

Finally, the Court finds Plaintiff would be prejudiced if the Court were to grant DPCC's untimely motion to disqualify. Plaintiff retained his chosen counsel over two years ago, litigation commenced over eighteen months ago, and discovery has been ongoing since June 2016. Discovery has not proceeded in an efficient manner, partly because the Di Mases seemingly failed to do anything while proceeding pro se. The parties are now engaged in bitter discovery disputes. Docs. #144, 148, 155, 158. In light of the cumbersome discovery issues, the Court has stayed all deadlines in the Scheduling and Trial Order and amendments thereto. Doc. #161. The Court's stay was imposed to allow a reasonable period of time to address discovery issues, not to account for further delay that would result in Plaintiff locating new counsel and getting that counsel updated on the complicated legal and factual issues presented in this matter. The Court finds alleged conflicts of interest were waived due to a failure to timely raise them with the Court. For this reason alone, the Court denies DPCC's motion to disqualify Polsinelli.

---

[2] The Court also finds alleged conflicts raised in DPCC's supplement to its motion (Doc. #145) were not timely raised. After DPCC filed its motion, Defendant Joseph Johnston, a previous owner of DPCC and later a board member, informed his attorney that Polsinelli also represented DPCC and/or other entities with which Johnston was involved. This information has been known for years and should have been shared with counsel and other parties well before February 2018 if the parties believed a conflict of interest was presented by that previous representation.

*B. Disqualification*

Although the Court finds DPCC's motion to disqualify was not timely raised, the Court will also explain why it does not find a conflict of interest requiring disqualification of Polsinelli. "The disqualification of an attorney is a matter that lies within the sound discretion of the trial court." *Polish Roman Catholic St. Stanislaus Parish*, 303 S.W.3d at 598 (Mo. Ct. App. 2010) (citations omitted). Because of the potential for abuse by opposing counsel, "disqualification motions should be subjected to 'particularly strict judicial scrutiny.'" *Harker v. C.I.R.*, 82 F.3d 806, 808 (8th Cir. 1996) (citations omitted).

The pending motion is brought pursuant to two different but related professional conduct rules. That is, Missouri Rule of Professional Conduct 4-1.9 prevents an attorney who has formerly represented a client to represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client. Mo. R. Prof'l Conduct 4-1.9. Generally, if an attorney is prohibited from representing a client, no lawyers associated with that attorney's firm shall knowingly represent that client. Mo. R. Prof'l Conduct 4-1.10.

To establish a conflict of interest under Missouri Rule of Professional Conduct Rule 4–1.9, the movant must establish (1) the attorney had a former attorney-client relationship with the movant; (2) the interests of the attorney's current client are materially adverse to the movant's interests; and (3) the current representation involves the same or a substantially related matter as the attorney's former representation of the movant. *Polish Roman Catholic St. Stanislaus Parish*, 303 S.W.3d at 600-01 (citations omitted). Here, Plaintiff's response argues previous matters on which Polsinelli advised DPCC are not the same or substantially related to the pending litigation, but does not argue an attorney-client relationship did not exist or that Plaintiff's interests in the current litigation are not adverse to DPCC. Accordingly, the Court need only consider whether previous matters are the same or substantially related to the current litigation.

The Court determines whether matters are the same or substantially related by analyzing relevant facts of the representation, giving full consideration of the unique facts and circumstances of each case. *In re Carey*, 89 S.W.3d at 494 (citation omitted). "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter

7

in question." Mo. R. Prof'l Conduct Rule 4–1.9 cmt 2. The key to the analysis is whether there was a central issue common to both representations. *In re Carey*, 89 S.W.3d at 494 (citation omitted). The Missouri Supreme Court has listed a "non-exhaustive" set of six factors a Court may consider in determining whether matters are substantially related. These include:

> (1) the case involved the same client and the matters or transactions in question are relatively interconnected or reveal the client's pattern of conduct; (2) the lawyer had interviewed a witness who was key in both cases; (3) the lawyer's knowledge of a former client's negotiation strategies was relevant; (4) the commonality of witnesses, legal theories, business practices of the client, and location of the client were significant; (5) a common subject matter, issues and causes of action existed; and (6) information existed on the former client's ability to satisfy debts and its possible defense and negotiation strategies.

*Id.* (citations omitted). The parties offered to submit documents pertaining to the pending motion for an in camera review, and the Court received and reviewed those documents. Doc. #159.

DPCC first engaged Polsinelli to work on a matter in May 2013. Polsinelli was asked to provide advice and revisions on a non-disclosure agreement with a third-party not involved in this litigation. As part of that representation, a Polsinelli attorney requested and received a copy of the 2012 Amended and Restated Exclusive License, Marketing and Distribution Agreement ("2012 amended license") between DPCC and Xurex that is one of multiple contracts at issue in this litigation. The Polsinelli attorney requested the document because DPCC wanted confirmation that it could enter into the non-disclosure agreement without violating the 2012 amended license. In a summary memorandum of her review of the non-disclosure agreement that was the subject of the representation, a Polsinelli attorney stated:

> As a preliminary matter, we have confirmed that DCC is authorized to enter into the Confidentiality Agreement with [third-party] pursuant to Section 4 of the [2012 amended license]. This section gives DCC the right to find business relations in each geographic area of the Territory and to exploit the licensed products in those areas. As such, DCC is permitted under the [2012 amended license] to enter into business discussions with [third-party] in order to expand global opportunities for the use and sale of the licensed products.

The attorney then provided suggested revisions to the agreement. A few days later, DPCC's officer informed Polsinelli that the third-party accepted the suggested revisions, and the matter was not discussed further.

Although Polsinelli received a copy of the 2012 amended license, Polsinelli attorneys were not involved in the negotiation and signing of the document, nor were they asked by DPCC to review the document for legality beyond DPCC's specific question regarding authority to enter into the non-disclosure agreement that was the subject of the representation. The non-disclosure agreement is connected to the 2012 amended license solely because the 2012 amended license permitted DPCC to enter into the non-disclosure agreement. This representation did not involve extensive negotiations that would reveal how DPCC conducted business, nor does it present common legal or factual issues with this litigation. The Court does not view Polsinelli as "changing sides" in this matter, which does not involve the non-disclosure agreement on which Polsinelli was engaged.

DPCC's second engagement with Polsinelli occurred in September 2013 when DPCC requested assistance in drafting a shared services agreement. As explained by DPCC's officer, the agreement was to allow Xurex's new CEO, Len Kaiser, to have office space in the DPCC building. Within a few days, a Polsinelli attorney drafted the agreement and sent it to DPCC's officer. This agreement is not at issue in this litigation. Plaintiff's Complaint alleges DPCC caused Xurex to shut down its office and move into DPCC's office, but the Complaint states this occurred starting in March 2012, well before Polsinelli was asked to draft the shared services agreement. Polsinelli was asked to draft the agreement, but there is no suggestion of improper motives, means, or other conduct disclosed to Polsinelli attorneys that Plaintiff's current counsel has utilized in the current litigation. The Court considered the *Carey* factors recited above, and does not view Polsinelli as "changing sides" in this matter as opposed to the drafting of the shared services agreement.

The Court recognizes DPCC's officers and Polsinelli attorneys met in person and communicated via email. Polsinelli's substantive work for DPCC was limited to the two matters identified above. DPCC contemplated additional work in late 2013, but Polsinelli was not hired and did not perform additional work. Although Plaintiff portrays

the Complaint as containing information that was obtained via Polsinelli's previous representation of DPCC, information about the relationship and dealings between Xurex and DPCC was independently available and independently obtained by Xurex and/or its current counsel.[3] For the additional reason that the Court does not find conflicts of interest requiring Polsinelli's disqualification in this matter, the Court denies DPCC's motion to disqualify Polsinelli as counsel for Plaintiff.

IT IS SO ORDERED.

                                                              /s/ Ortrie D. Smith
                                                              ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 22, 2018                           UNITED STATES DISTRICT COURT

---

[3] The Court acknowledges DPCC's supplement to its motion wherein DPCC details alleged conflicts brought to DPCC's attention by Joseph Johnston, DPCC's former owner and a defendant in this matter. Doc. #145. The Court reviewed the parties *in camera* submissions and briefing, but does not find disqualification is required based on the previous representations of clients and corporate entities on matters that are not at issue in the current litigation.