IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JERALD S. ENSLEIN, in his capacity as )
Chapter 7 Trustee for Xurex, Inc.,                )
                                                                     )
                    Plaintiff,                              )
                                                                     )
vs.                                                              )          Case No. 16-09020-CV-W-ODS
                                                                     )
GIACOMO E. DI MASE, et al.,                  )
                                                                     )
                    Defendants.                       )

ORDER AND OPINION (1) GRANTING PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT AGAINST THE DURASEAL DEFENDANTS, (2) GRANTING PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT AGAINST JENSVOLD, (3) DEFERRING ENTRY
OF ORDER ON PLAINTIFF'S MOTION TO VOLUNTARILY DISMISS CERTAIN
CLAIMS, AND (4) REQUESTING PARTIES' INPUT ON ISSUE OF DAMAGES

Pending are Plaintiff's Motion for Default Judgment or Entry of Default Against
Defendants DuraSeal Pipe Coatings Company LLC, DuraSeal Holdings S.r.L., and HDI,
Holding Development Investment, S.A. (collectively, "DuraSeal Defendants") (Doc.
#638); Plaintiff's Motion for Default Judgment or Entry of Default Against Defendant
Tristram Jensvold (Doc. #639); and Plaintiff's Motion to Voluntarily Dismiss Certain
Claims (Doc. #640).  For the following reasons, the Court grants Plaintiff's motion for
default judgment against the DuraSeal Defendants and grants Plaintiff's motion for
default judgment against Defendant Jensvold.  Regarding Plaintiff's motion to voluntarily
dismiss certain claims, the Court intends to dismiss those claims with prejudice.  Plaintiff
has seven days from the date of this Order to seek to withdraw his motion, or, if no
motion is filed, accept the Court's decision to dismiss the claims with prejudice.  Finally,
the Court requests input from the parties on the issue of damages.


I.        SUMMARY OF PROCEDURAL HISTORY

In October 2016, Plaintiff Jerald Enslein, the Chapter 7 Trustee for Xurex, Inc.,
asked this Court to withdraw the reference of an adversary proceeding he filed with the
Bankruptcy Court.  Doc. #1.  In April 2017, the Honorable Howard Sachs granted
Plaintiff's request.  Doc. #5.  The matter was then reassigned to the undersigned.

In August 2018, Plaintiff filed his Amended Complaint. Doc. #244. Plaintiff alleged three corporate entities – i.e., DuraSeal Pipe Coatings Company LLC ("DuraSeal Pipe"), DuraSeal Holdings S.r.L. ("DuraSeal Holdings"), and HDI, Holding Development Investment, S.A. ("HDI") – and nine individuals – i.e., Giacomo Di Mase, Jose Di Mase, Leonard Kaiser, Tristram Jensvold, Steve McKeon, Lee Kraus, Joseph Johnston, Dietmar Rose, and Robert Olson – breached contracts, violated the covenant of good faith and fair dealing, misappropriated trade secrets, engaged in a civil conspiracy, breached fiduciary duties, aided and abetted breaches of fiduciary duties, and made fraudulent transfers. Doc. #1-2; Doc. #244. In total, Plaintiff asserted fourteen causes of action and sought monetary and equitable relief.

In June 2019, the Court issued decisions on, among other things, eleven summary judgment motions. Doc. #434-1. The Court entered summary judgment in favor of DuraSeal Pipe and DuraSeal Holdings on Plaintiff's breach of implied covenant of good faith and fair dealing claims (Count IV); granted summary judgment in favor of the DuraSeal Defendants, Kraus, Jose Di Mase, and Giacomo Di Mase on Plaintiff's misappropriation of trade secrets claims (Count V); and entered summary judgment in favor of Giacomo Di Mase, Jose Di Mase, Kraus, and the DuraSeal Defendants on Plaintiff's claims of aiding and abetting breach of fiduciary duty (Count VIII). *Id.*

In July 2019, counsel for the DuraSeal Defendants, Giacomo Di Mase, Jose Di Mase, and Kraus moved to withdraw. Doc. #439. The Court granted the motion. Doc. #442. In its Order, the Court informed the individual Defendants that they could proceed pro se but the corporate entities, the DuraSeal Defendants, were not permitted to represent themselves. *Id.* at 2. The Court stated: "The corporate defendants must secure legal representation before the pretrial conference is held in this matter. If legal representation is not secured by the corporate defendants, they may be subject to default judgment against them and in Plaintiff's favor." *Id.* at 2-3 (citations omitted).

On August 20, 2019, the Court reminded the parties of the pretrial conference scheduled for September 11, 2019. Doc. #471. On September 4, 2019, the Di Mases, on behalf of themselves and the DuraSeal Defendants, moved for leave to appear at the pretrial conference via telephone or video. Doc. #504. On September 6, 2019, the Court granted the Di Mases' request to appear on behalf of themselves at the pretrial

conference telephonically.  Doc. #506.  However, the Court stated the following about the corporate entities' request:

> To this Court's knowledge, neither Di Mase Defendant is licensed to practice law or admitted to this Court's bar.  They may NOT represent the corporate entities or file documents on behalf of the corporate entities.
>
> The Court notes the corporate entities are designated as "pro se" in the pending motion.  To be clear, the corporate entities are not permitted to represent themselves.  And, if they are not represented by counsel, the corporate entities may not attend or participate in the pretrial conference.  Without representation, no one is permitted to speak on behalf of the corporate entities or carry out any order issued by the Court to the corporate entities.  If they fail to secure counsel to represent them at the pretrial conference, the corporate entitles will be in violation of this Court's Orders, which will justify the Court entering a monetary judgment against them and in Plaintiff's favor….
>
> The Court ignores the request made for the corporate entities to appear telephonically at the pretrial conference.  Inasmuch as they are unrepresented by counsel, the corporate entities may not file documents or otherwise defend themselves in this action.

*Id.* at 2.  The corporate entities continued to be unrepresented, defying the Court's Orders that they secure counsel before the pretrial conference.  Further violating the Court's Orders, the corporate entities did not obtain counsel to appear for them at the pretrial conference or file any of the required pretrial filings.

On September 16, 2019, based on the corporate entities' willful violations of the Court's Orders and their failure to defend against the lawsuit, the Court entered default as to liability against DuraSeal Pipe and DuraSeal Holdings on Plaintiff's breach of contract claims (Counts I, II, and III).  Doc. #516, at 1-6.  The Court held in abeyance entry of damages on these claims because they were not for sums certain.  *Id.* at 6.  To avoid inconsistent results, the Court did not enter default against the corporate entities on the remaining claims because those claims were brought against other Defendants who could be jointly and severally liable for damages.  *Id.* at 6-7.

On November 1, 2019, the Court denied Plaintiff's request to enter default judgment against Jensvold because the claims against him were also brought against other Defendants who could be jointly and severally liable for damages.  Doc. #609.  Thus, the Court would wait until those claims were adjudicated against the other Defendants before finding Jensvold in default.  *Id.*

That same day, the Court noted the corporate entities remained unrepresented. *Id.* at 6. The Court reiterated: "DuraSeal Pipe, DuraSeal Holdings, and HDI are not permitted to present evidence, argument, or otherwise participate in the trial. They are not allowed to file pretrial or trial documents. Further, the individual Defendants, who are not licensed attorneys and are not admitted to practice in this Court, are prohibited from presenting evidence or argument on behalf of DuraSeal Pipe, DuraSeal Holdings, and HDI." *Id.* at 6-7.

On November 4, 2019, trial began.[1] The only claims Plaintiff submitted to the jury were civil conspiracy (Count VI) against Jose Di Mase and Kraus, and breach of fiduciary duty (Count VII) against Johnston, Jose Di Mase, Giacomo Di Mase, and Kaiser. Regarding the claims arising from the 2012 Amendment, the jury found in favor of Johnston on Plaintiff's breach of fiduciary duty claim; however, the jury found in favor of Plaintiff on his conspiracy and breach of fiduciary duty claims against Jose Di Mase and awarded $93,506,632.00 in actual damages but no punitive damages. Doc. #630, at 1-2. Regarding the claims arising from elimination of minimum purchase obligations, creation of the rights to manufacture and produce Xurex products, and/or the 2014 Amendment, the jury found in favor of Plaintiff on his conspiracy claims against Jose Di Mase and Kraus and in favor of Plaintiff on his breach of fiduciary duty claims against Jose Di Mase, Giacomo Di Mase, and Kaiser. *Id.* at 3-4. The jury awarded $24,414,522.00 in actual damages but no punitive damages. *Id.*

On January 10, 2020, Plaintiff filed two motions for default judgment and a motion to voluntarily dismiss certain claims. Docs. #638-40. Kraus timely opposed the motion to dismiss. Doc. #651. The Court directed Defendants to show cause why the relief requested by Plaintiff should not be granted. Docs. #652-54. Jose Di Mase, purportedly on behalf of the corporate entities and possibly on behalf of himself, opposed the motion for default judgment against the DuraSeal Defendants and the motion to dismiss.[2] Doc. #655. Plaintiff filed replies on February 7, 2020, and February 19, 2020. Docs. # 657-58.

---

[1] Before trial commenced, Plaintiff's claims against Rose, McKeon, and Olson were dismissed with prejudice. Doc. #599, 600, 604.

[2] As far back as July 2019, the corporate entities knew they were required to be represented by counsel. Doc. #442, at 2-3. In September 2019, the corporate entities

## II.  PLAINTIFF'S MOTIONS

### A. Motion for Default Judgment Against the DuraSeal Defendants (Doc. #638)

Plaintiff seeks entry of default judgment against DuraSeal Pipe, DuraSeal Holdings, and HDI on his claims of breach of fiduciary duty (Count VII); against DuraSeal Pipe on his cause of action for objection to a bankruptcy claim (Count XI); and against DuraSeal Pipe on his equitable subordination claim (Count XII).[3] Doc. #638. Plaintiff contends entry of default judgment is appropriate pursuant to Rules 16 and 55 of the Federal Rules of Civil Procedure.

### (1) Unrepresented Corporate Entities

Once the DuraSeal Defendants' attorneys were granted leave to withdraw, each corporate entity was, according to the Eighth Circuit, "technically in default." *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996) (citation and internal quotations omitted) (finding an unrepresented company was "technically in default" once counsel withdrew); *Blank v. Broadsword Grp., LLC*, No. 14CV1550, 2017 WL 5132662, at *4 (E.D. Mo. Nov. 6, 2017) (finding an unrepresented company in default for "being without counsel and for its failure to appear at a long-set trial of the case"); *Barth v. Patinan Tuatanto, LLC*, No. 11-950, 2012 WL 13029571, at *2 (D. Minn. Apr. 12, 2012) (entering default judgment against an unrepresented company).

Since July 2019, when the Court granted their attorneys' motion to withdraw, the DuraSeal Defendants knew they could not represent themselves. Docs. #442, 471 (citations omitted). And they were forewarned at least three times that if they did not obtain counsel, the Court would be justified in entering judgment against them. Doc. #442, at 2-3; Doc. #506, at 2. Seven months have passed since counsel was permitted to withdraw, but the DuraSeal Defendants remain unrepresented. Thus, they have been in default since July 2019.

---

knew the Court would ignore any filings not filed by an attorney. Doc. #506, at 2. The latest filing, which is signed by Jose Di Mase purportedly on behalf of the corporate entities, was not filed by an attorney. Doc. #655. Thus, the Court ignores the filing as it relates to the DuraSeal Defendants' response to the motion for default judgment.

[3] As discussed *infra*, section III, Plaintiff moves to voluntarily dismiss the remaining claims against the DuraSeal Defendants.

If a party fails to appear at a pretrial conference or fails to obey a scheduling or pretrial order, the Court "may issue any just orders," which includes sanctioning a party. Fed. R. Civ. P. 16(f)(1)(A), (C); *see also Nick v. Morgan's Foods, Inc.*, 270 F.3d 590, 594-96 (8th Cir. 2001) (stating "[d]istrict courts have explicit authority to require pretrial conferences" and "Rule 16(f) expressly permits a judge to impose any other sanction the judge deems appropriate").  Available sanctions include, but are not limited to, prohibiting a party from "opposing designated claims," "dismissing the action," "striking pleadings," and "rendering a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii); *see also Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020-21 (8th Cir. 1999) (citation omitted) (stating, if "default judgment lies within the spectrum of appropriate sanctions," the Eighth Circuit will "not substitute our own judgment for that of the district court even though we may have chosen a different sanction had we been standing in the shoes of the trial court.").  "Default judgment is appropriate where the party against whom the judgment is sought has engaged in 'willful violations of court rules, contumacious conduct, or intentional delays.'"  *Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001) (quoting *Ackra Direct Mktg.*, 86 F.3d at 856).

The DuraSeal Defendants disregarded numerous deadlines in the Court's Scheduling and Trial Order.  Docs. #38, 120, 138, 174, 432.  Although they knew pretrial filings were due beginning in August 2019, the DuraSeal Defendants did not file any pretrial filings.  Although required by the Scheduling and Trial Order, they did not file witness lists or exhibit lists.  Also, they did not file motions in limine or deposition designations.  And the DuraSeal Defendants did not collaborate with the other parties in preparing and filing joint pretrial filings required by the Scheduling and Trial Order – i.e., stipulations of fact and stipulations as to foundation and admissibility of exhibits.

The DuraSeal Defendants' blatant disregard of the Court's Scheduling and Trial Order justifies entry of default judgment.  *See Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009-10 (8th Cir. 1993) (affirming the district court's entry of default against a party that failed to comply with court orders and discovery requests); *Marriott Homes, Inc. v. Hanson*, 50 F.R.D. 396, 400 (E.D. Mo. 1970) (entering default against the defendant because, among other things, he failed to comply with the court's orders, including the

filing of witness and exhibits list). Because the corporate entities did not file exhibit lists or witness lists, they "made it impossible to ascertain whether the allegations in [their] answer…have any factual merit." *Marriott Homes*, 50 F.R.D. at 400; *Life Ins. Co. of N. Am. v. Eufracio*, No. 13-CV-3023-DEO, 2014 WL 6775559, at *2-3 (N.D. Iowa Dec. 2, 2014) (entering default against the defendant because, among other things, he did not file his exhibit and witness lists). Furthermore, by failing to abide by the Court's Scheduling and Trial Order, the corporate entities violated the Federal Rules of Civil Procedure, which allow this Court to sanction a party for failing "to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(a), 16(b), 16(c), 16(d), 16(e), 16(f)(C).

In addition, the DuraSeal Defendants did not appear at the Court's pretrial conference. The Court forewarned the DuraSeal Defendants that their failure to appear at the pretrial conference would likely result in entry of judgment against them. Knowing full well the consequences of their decision, DuraSeal Defendants chose not to attend the pretrial conference. In purposely deciding not to attend the pretrial conference, the DuraSeal Defendants violated the Court's Orders directing them to participate in the pretrial conference.[4] The DuraSeal Defendants' failure to appear at the pretrial conference also violated the Federal Rules of Civil Procedure, which permit the Court to sanction a party who "fails to appear at a…pretrial conference." Fed. R. Civ. P. 16(f)(1)(A). These willful violations also justify entry of default judgment against the DuraSeal Defendants. *See Ackra Direct Mktg.*, 86 F.3d at 856 (finding a company's failure to respond to orders, comply with pretrial requirements, and attend the pretrial hearing were grounds for default judgment); *Armagost v. United States*, No. 07-CV-3240, 2010 WL 829178, at *1-2 (D. Neb. Mar. 4, 2010 (citations omitted); *Wood Re New Franchise Corp. v. Gibson*, No. 06-CV-3312-GAF, 2008 WL 11338458, at *1 (W.D. Mo. June 17, 2008) (citations omitted).

For all the foregoing reasons and pursuant to Rule 16(f) of the Federal Rules of Civil Procedure, the Court grants Plaintiff's motion for entry of default judgment against

---

[4] Furthermore, alleged "financial hardship" does not excuse a corporate entity from being represented by counsel. *See Hanesbrand, Inc. v. Seduzione Leggs, LLC*, No. 11-CV-569-BCW, 2014 WL 12605457, at *2 (W.D. Mo. July 21, 2014) (citation omitted). A corporate entity "cannot accept the business form but ignore the associated burdens," including the requirement that it be represented by counsel. *Id*.

DuraSeal Pipe, DuraSeal Holdings, and HDI on Count VII; against DuraSeal Pipe on Count XI; and against DuraSeal Pipe on Count XII.[5] The Court defers its determination of damages and likewise entry of judgment at this time. As explained *infra*, section III, the Court requests the parties' input on the damages to be assessed against the DuraSeal Defendants.

### B. Motion for Default Judgment Against Tristram Jensvold (Doc. #639)

On November 16, 2017, Jensvold was served with Plaintiff's Complaint but did not respond. Doc. #122.[6] On December 14, 2017, the Court issued an Order stating, "the Record reflects Defendant Jensvold is in default." Doc. #130. The Court directed Jensvold to show cause why a judgment in default should not be entered against him. *Id.* Jensvold was forewarned that his failure to comply with the Order may result in an entry of judgment against him without further notice. *Id.* Jensvold has never responded to the Court's Order or Plaintiff's Complaint.

As set forth *supra*, section I, the Court denied Plaintiff's previous request to enter default judgment against Jensvold in September 2019 but "expressly reserve[d] the right to enter default at a later time on the claims against Jensvold." *Id.* at 4. Pursuant to Rules 16 and 55 of the Federal Rules of Civil Procedure Plaintiff now asks the Court to enter default judgment against Jensvold on Count VII (breach of fiduciary duty).[7] Doc. #639. No party has opposed Plaintiff's motion, and the time for doing so has passed.

Once Jensvold was served, all Orders were mailed to him. Yet, Jensvold disregarded those Orders and never defended himself in this matter. By failing to abide

---

[5] Because the Court finds entry of default judgment is justified under Rule 16(f), it is unnecessary to consider Plaintiff's alternative basis for its motion for default judgment. Nonetheless, the Court notes the Eighth Circuit has found "[d]efault judgment for failure to defend is appropriate when the party's conduct includes willful violations of court rules, contumacious conduct, or intentional delays." *Ackra Direct Mktg.*, 86 F.3d at 856 (citation and internal quotations omitted). As shown above, the DuraSeal Defendants engaged in contumacious conduct by willfully violating several of the Court's Orders and intentionally disobeying the Federal Rules of Civil Procedure.

[6] Plaintiff amended his Complaint in August 2018, asserting one additional claim against Jensvold. But the Amended Complaint was not served on Jensvold. Doc. #244.

[7] Similar to the last motion for default judgment against Jensvold, the Court considers Plaintiff's Complaint (not his Amended Complaint, which was never served on Jensvold) when examining the motion for default against Jensvold. Doc. #609, at 3 n.1

by any of the deadlines in the Court's Scheduling and Trial Order, Jensvold violated the Federal Rules of Civil Procedure, which allow this Court to sanction him failing "to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(a), 16(b), 16(c), 16(d), 16(e), 16(f)(C). Moreover, although he was informed of the Court's pretrial conference and the trial setting, Jensvold did not appear at either the pretrial conference or trial. In doing so, he disregarded the Court's Orders and the Federal Rules of Civil Procedure. Fed. R. Civ. P. 16(f)(1)(A).

For more than two years, Jensvold knowingly chose to violate the Court's Orders and the Federal Rules of Civil Procedure. Based on its discussion above as to Rule 16(f), the Court finds entry of a default judgment against Jensvold is justified and appropriate. *See supra*, section II(A)(2). Accordingly, the Court grants Plaintiff's motion for default judgment against Jensvold on Count VII. The Court defers its determination of damages and entry of judgment at this time. As explained *infra*, section III, the Court requests the parties' input on the damages to be assessed against Jensvold.

### C. Motion to Voluntarily Dismiss Certain Claims (Doc. #640)

To "streamline the remaining issues before the Court in order to enable it to enter a final judgment without the necessity of further proceedings," Plaintiff seeks voluntary dismissal of certain claims not tried to the jury. Doc. #640, at 1. Specifically, Plaintiff seeks to dismiss following claims against the identified parties without prejudice:

- Counts I, II, and III – breach of contract – DuraSeal Pipe and DuraSeal Holdings
- Count VI – civil conspiracy – DuraSeal Defendants and Jensvold
- Counts IX and X – fraudulent transfers – DuraSeal Pipe and DuraSeal Holdings
- Count XI – objection to bankruptcy claim – Johnston
- Count XII – equitable subordination – Johnston and DuraSeal Holdings
- Counts XIII and XIV – declaratory judgment – all Defendants

Doc. #640.[8]

---

[8] The Court refers to these claims as the "identified claims." Although Plaintiff also moves to dismiss "any other claims on which the jury did not render verdicts or which the Trustee is not seeking default in his contemporaneously-filed motions," it appears that all remaining claims were identified by Plaintiff. Doc. #640, at 6.

(1) <u>Standard</u>

Rule 41(a)(2) authorizes voluntary dismissal of claims "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The rule's primary purpose is "to prevent voluntary dismissals which unfairly affect the other side. Courts generally will grant dismissals where the only prejudice the defendant will suffer is that resulting from a subsequent lawsuit." *Paulucci v. City of Duluth*, 826 F.2d 780, 782-83 (8th Cir. 1987).

(2) <u>The Parties' Arguments</u>

Plaintiff maintains his motion should be granted because "there has been very limited to no additional expense incurred by defendants related to the vast majority of the [identified] claims." *Id.* at 3. Plaintiff argues there was no "separate discovery, briefing, or proceeding" related to Counts IX through XIV. *Id.* In the alternative and if the Court is inclined to dismiss any claims with prejudice, Plaintiff asks the Court to first provide him "with an opportunity to seek bankruptcy court approval of any dismissal with prejudice, out of an abundance of caution." *Id.* at 4. But he concedes there is no case law establishing a Rule 41(a)(2) dismissal with prejudice of a bankruptcy trustee's claims requires the Bankruptcy Court's approval. *Id.*

Kraus, now represented by counsel, contends Plaintiff's argument that Defendants have had no or limited expense related to the identified claims is unsupported. Doc. #651, at 1-2. He also argues Plaintiff's alternative request for Bankruptcy Court approval of this Court's dismissal of claims with prejudice is unfounded. *Id.* If the Court is inclined to dismiss Counts XIII and XIV without prejudice, Kraus suggests, in the alternative, the Court's Order of Dismissal include a condition – i.e., if Plaintiff refiles those claims, Kraus should be entitled to recover the costs and fees he incurred in this matter. *Id.* at 2-3.

To the extent Jose Di Mase's filing on behalf of the DuraSeal Defendants could be construed as his individual opposition to Plaintiff's motion to voluntarily dismiss, he argues the motion should be denied. He contends the basis for the motion – to ensure consistency with the jury verdicts – is flawed because the verdict was "vacated." Doc. #655, at 1. To be clear, the jury's verdicts were not vacated. The remainder of Jose Di Mase's filing largely reiterates Kraus's arguments. *Id.* at 3-5.

(3) <u>Relevant Factors</u>

When faced with a Rule 41(a)(2) motion, the Court considers, among other things, (1) expenses and costs related to the lawsuit; (2) the defendant's efforts and expenses involved in preparing for trial; (3) "whether a dismissal would result in a waste of judicial time and effort"; (4) "whether a dismissal will prejudice the defendants"; (5) "the absence of a justification for the proposed dismissal"; and (6) whether the defendants had filed a motion for summary judgment.  *Mullen v. Heinkel Filtering Sys., Inc.*, 770 F.3d 724, 728 (8th Cir. 2014) (citation omitted); *Paulucci*, 826 F.2d at 783 (citations omitted); *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213-14 (8th Cir. 2011) (citations omitted); *Hamlin Grp., LLC v. Third Generation Inv.*, 613 F. Supp. 2d 1062, 1065 (N.D. Iowa 2009) (citations omitted).

First, the expenses and costs related to the lawsuit have been substantial. Numerous motions were filed, including but not limited to eleven motions for summary judgment,[9] two motions to dismiss, two motions to strike experts, four motions to compel discovery, four motions for protective orders, a motion to strike, and a motion to disqualify counsel.  Docs. #20, 25, 97, 104, 109, 142, 144, 208, 213, 299, 334, 347, 348, 350, 356, 358-63, 365-67.  Regarding the eleven summary judgment motions alone, more than 170 exhibits were submitted in support and more than 200 exhibits were submitted in opposition.  This matter was time and document-intensive, and the attorneys' fees and expenses have been significant.

Second, Defendants, apart from Jensvold, incurred a great deal of time and costs preparing and defending themselves at trial.  While the remaining Defendants, excluding Jensvold, were pro se at trial, they prepared pretrial filings, participated in the pretrial conference, collaborated with Plaintiff on pretrial filings, organized exhibits, and arranged for witnesses to testify at trial.  Presumably, they likely prepared notes or outlines for their examination and cross-examination of witnesses.

Third,  during the last three years, this matter occupied more judicial time than any other matter assigned to the undersigned.  This matter had far more filings, discovery disputes, and motions than any other matter.  The judicial time was spent on

---

[9] One factor to be considered is whether Defendants filed a motion for summary judgment.  Here, Defendants filed ten motions for summary judgment.

claims other than the civil conspiracy and breach of fiduciary duty claims, which were tried to the jury. By way of example, Plaintiff's breach of contract claims (Counts I, II, and III), which Plaintiff now seeks to dismiss without prejudice, consumed a great deal of the Court's time.

Fourth, if Plaintiff is granted the relief he seeks, nothing (of which the Court is aware) prevents him from refiling the identified claims. If these claims are refiled and relitigated, Defendants will have to engage in what will likely be duplicative discovery and motion practice. And Defendants would be forced to defend themselves once more on the same actions (or inactions) that were tried to a jury in this matter. Accordingly, Defendants will be prejudiced if the identified claims are dismissed without prejudice.

Fifth, Plaintiff's alleged justification for dismissal without prejudice is lacking. Plaintiff's sole basis for moving to dismiss Counts I, II, and III without prejudice is "to avoid potentially duplicative awards." Doc. #640, at 2. But Plaintiff does not explain why Counts I, II, and III should be dismissed without prejudice. It seems more logical to dismiss those claims with prejudice so that those claims cannot be refiled and duplicative awards obtained. Similarly, other than indicating default judgment may be entered on the breach of fiduciary duty claims, Plaintiff does not justify why Count VI, for civil conspiracy against the DuraSeal Defendants and Jensvold, should be dismissed without prejudice. Significantly, Plaintiff ignores the likely prejudice to Defendants, including but not limited to having to defend themselves again if the claims are refiled, if the Court dismisses these claims without prejudice.

Regarding Counts IX, X, XI, XII, XIII, and XIV, Plaintiff contends minimal expense incurred by Defendants in defending these claims. Plaintiff's argument presumes fees and expenses can be apportioned among the different claims. While there may not have been motions, separate or otherwise, addressing most of these claims, Counts IX through XIV are not wholly unrelated to other claims.

For example, Counts XIII and XIV seek declarations as to the validity and enforceability of two contracts that were allegedly breached, as alleged in Counts I, II, and III. Further, the alleged breach of those contracts support, in part, Counts VI and VII, which were tried to the jury. Likewise, Counts IX and X are based on Defendants' actions related to the 2014 Amendment, which also support, in part, Count VII. And

Count XII seeks equitable relief based on Defendants' alleged wrongdoing and inequitable conduct – presumably, the wrongdoing and conduct alleged in Counts I, II, III, VI, and VII.

Counts IX through XIV are interconnected with claims for which extensive discovery and briefing were conducted. These claims are also related to claims tried to the jury. Consequently, it is difficult to discern how expenses and fees could be allocated among the claims. Thus, the Court is not persuaded by Plaintiff's argument that there was little to no expense incurred by Defendants on Counts IX through XIV.

When justifying his request to voluntarily dismiss the identified claims, Plaintiff neglects to address the possible (if not likely) prejudice to Defendants if the Court dismisses these claims without prejudice. Based on the foregoing reasons, the Court finds Plaintiff failed to provide a sufficient explanation for his request to dismiss the identified claims without prejudice.

As demonstrated by the Court's analysis of the relevant factors, if the identified claims were dismissed without prejudice, Defendants will be prejudiced. Pursuant to the Eighth Circuit's declaration that "[v]oluntary dismissal under Rule 41(a)(2) should not be granted if a party will be prejudiced by the dismissal" and the Court's analysis of the relevant factors, the Court finds Plaintiff's dismissal should be with prejudice. *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1079 (8th Cir. 2017) (citation omitted).

Because the Court intends to dismiss the identified claims with prejudice, the Court "must give the plaintiff notice of its intention and a chance to withdraw the request and proceed with litigation." *Jaramillo v. Burkhart*, 59 F.3d 78, 79 (8th Cir. 1995). Plaintiff, however, chose not to submit the claims he wishes to voluntarily dismiss without prejudice to the jury or the Court. Thus, it is unclear how Plaintiff could proceed with litigating those claims. Nevertheless, Plaintiff may refuse the Court's decision to dismiss the identified claims with prejudice and withdraw his Rule 41(a)(2) motion. Plaintiff must seek to withdraw his motion within seven calendar days of the entry of this Order. If Plaintiff does not move to withdraw his motion within that time, the Court will deem the absence of a motion to be Plaintiff's election to accept the Court's decision to dismiss the identified claims with prejudice.

(4) <u>Alternative Request for Bankruptcy Court's Approval</u>

If the Court is inclined to dismiss claims with prejudice, Plaintiff asks that the Court provide the Trustee with an opportunity to seek the Bankruptcy Court's approval. Doc. #640, at 4.  In support, Plaintiff cites Rule 9019 of the Federal Rules of Bankruptcy Procedure, which states, in relevant part, the following: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  But Plaintiff concedes: "there is an absence of case law to definitively confirm that a dismissal with prejudice does not require bankruptcy court approval."  Doc. #640, at 4.

The lack of any authority for Plaintiff's request warrants denial of the relief he seeks.  The Court is unaware of any case or rule that would require this Court to refer a portion of this matter to the Bankruptcy Court for the sole purpose of deciding whether Plaintiff's motion for voluntary dismissal should be with or without prejudice.

Setting aside the Court's decision not to send Plaintiff's request to the Bankruptcy Court, the same decision, in all likelihood, would be rendered.  Identical to this Court, the Bankruptcy Court would have to apply Rule 41 and consider the same factors.  This is because Rule 41 of the Federal Rules of Civil Procedure "applies in adversary proceedings…"  Fed. R. Bankr. P. 7041.  For this additional reason, the Court will not grant Plaintiff's alternative request.

## III.  DAMAGES

The Court harbors concerns about Plaintiff's, or more accurately, Xurex's actual damages.  Before determining the amount of damages to be entered against the defaulted parties, the Court seeks guidance from the parties.

The jury awarded damages based on the testimony and report of Plaintiff's expert, Robert Reilly.  Reilly provided opinions about Xurex's damages resulting from the 2010 Agreements[10] and the 2012 Amendment.[11]  Doc. #644, at 98-99.  Reilly testified that one analysis of damages was "one state of damages" and his other

---

[10] "2010 Agreements" refers to the January 13, 2010 Exclusive License, Marketing and Distribution Agreement, and the December 31, 2010 Agreement.
[11] "2012 Agreement" refers to the January 11, 2012 Amended and Restated Exclusive License, Marketing and Distribution Agreement."

analysis was "another state of damages." Doc. #644, at 99-100. He explained the analyses were "alternatives." *Id.* at 100, 106. Despite his explanation, Reilly's opinions on the two different "states of damages" were not treated as such. In fact, Plaintiff asked the jury to award him both sums of damages. Doc. #648, at 32-33. And the jury awarded Plaintiff both sums. Doc. #630.

Regarding the 2010 Agreements, Reilly testified he assumed the following when rendering his opinion as to damages: the December 2010 Agreement stayed in place, the parties "honor[ed] the contract…for a 10-or-12-year year period and then renew it annually thereafter," and "there was not a 2012 analysis." Doc. #644, at 106-07. Per his trial testimony and expert report, Reilly's opinion as to Xurex's damages based on the December 2010 Agreement included lost profits and lost royalty income from 2010 through 2018. *Id.* at 102-07; Doc. #356-1, at 42, 67-68.[12] His opinion as to loss of business value included figures for 2016 through 2018. Doc. #644, at 104-07; Doc. #356-1, at 42, 67, 69-70.

Reilly's opinion as to damages from the 2012 Agreement assumed the 2012 Agreement "was a valid agreement," it stay[ed] in place," both parties would honor the agreement, the agreement "would go forward for 10 or 11 years," the agreement would be "renew[ed] annually thereafter," and there was no 2014 agreement. Doc. #644, at 107. For the 2012 Agreement, Reilly provided opinions as to Xurex's lost royalty income, lost profits, and lost fees from 2011 through 2022; and lost revenue during 2020, 2021, and 2022. Doc. #365-1, at 42, 82-89.

The Court is puzzled as to how both agreements can be considered valid, particularly when the 2010 Agreements were amended by the 2012 Amendment. It is perplexing how Xurex could be damaged under both contracts. And perhaps more confusing, how Xurex could be damaged – i.e., lost profits, royalties, fees, etc. – under both contracts during the same years. For these reasons, the Court asks the parties to provide input on these issues.

---

[12] Unfortunately, the Court was not provided with the exhibits to Reilly's Amended Expert Report, and the Court has been unable to locate the exhibits on the docket. So, the Court refers to Reilly's initial Expert Report. Although the figures are slightly different, Reilly utilized the same methods in arriving at his opinions on damages.

Within fourteen days of the date of this Order, the parties may, but is not required to, file a brief, no more than ten pages in length, providing input on the damages issues outlined by the Court. When filing their briefs, the parties should use the "Response to Order" ECF event. It will be unnecessary for any party to respond to the briefs filed by the other parties.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motions for default judgment against the DuraSeal Defendants and Jensvold. Regarding Plaintiff's motion to voluntarily dismiss certain claims, the Court intends to dismiss those claims with prejudice. Within seven days of the date of this Order, Plaintiff may seek to withdraw his motion, or, if no motion is filed, accept the Court's decision to dismiss the claims with prejudice. Finally, the Court requests input from the parties on the issue of damages.

IT IS SO ORDERED.

DATE: February 28, 2020

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT