IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JERALD S. ENSLEIN, in his capacity        )
as Chapter 7 Trustee for Xurex, Inc.,     )
                                          )
              Plaintiff,                  )
                                          )
vs.                                       )      Case No. 16-09020-CV-W-ODS
                                          )
GIACOMO E. DI MASE, et al.,               )
                                          )
              Defendants.                 )

ORDER AND OPINION (1) DENYING DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL,
AND (2) GRANTING PLAINTIFF'S MOTION TO CERTIFY JUDGMENT

Pending are Defendant Lee Kraus's Motion for Judgment as a Matter of Law or,
in the Alternative, Motion for New Trial (Doc. #678), and Plaintiff Jerald Enslein's Motion
to Certify Judgment against Defendant Lee Kraus (Doc. #690). For the following
reasons, the Court denies Kraus's motion and grants Plaintiff's motion.


I.      BACKGROUND[1]

In October 2014, Xurex, Inc. filed for Chapter 7 bankruptcy. In August 2016,
Plaintiff Jerald Enslein, as Chapter 7 Trustee for Xurex, filed an adversary proceeding in
the Bankruptcy Court against Jose Di Mase, Giacomo Di Mase, Tristram Jensvold,
Leonard Kaiser, Dietmar Rose, Lee Kraus, Joseph Johnston, Robert Olson, Steve
McKeon, DuraSeal Pipe Coatings Company ("DuraSeal Pipe"), DuraSeal Holding S.r.L.
("DuraSeal Holding"), and HDI, Holding Development Investment, S.A. ("HDI"). In April
2017, the Court granted Plaintiff's motion to withdraw the reference of the adversary
proceeding to the Bankruptcy Court. Doc. #5. In the Amended Complaint, Plaintiff
alleged several claims, including but not limited to, breach of contract, breach of

_____

[1] The Court briefly summarizes this matter's background. Additional background
information is discussed in prior decisions. *See*, *e.g.*, Doc. #434-1.

fiduciary duty, and civil conspiracy. In June 2019, the Court granted in part and denied in part the parties' eleven summary judgment motions. Doc. #434-1.

On November 4, 2019, trial began. The only claims Plaintiff submitted to the jury were civil conspiracy (Count VI) against Jose Di Mase and Kraus, and breach of fiduciary duty (Count VII) against Johnston, Jose Di Mase, Giacomo Di Mase, and Kaiser. These claims arose from a 2012 Amendment to a licensing agreement and a 2014 Amendment that eliminated minimum purchase obligations and created rights to manufacture and produce Xurex products.

Regarding the claims arising from the 2012 Amendment, the jury found in Johnston's favor on Plaintiff's breach of fiduciary duty claim but found in Plaintiff's favor on his claims against Jose Di Mase and awarded $93,506,632.00 in actual damages. Doc. #630, at 1-2. Regarding the claims against Jose Di Mase, Giacomo Di Mase, Kaiser, and Kraus arising from elimination of minimum purchase obligations, creation of the rights to manufacture and produce Xurex products, and the 2014 Amendment, the jury found in Plaintiff's favor and awarded $24,414,522.00 in actual damages. *Id.* at 3-4.

In March 2020, the Court clarified Plaintiff's total recovery for all claims was $93,506,632.00. Doc. #664, at 2-5. Jose Di Mase, DuraSeal Pipe, and DuraSeal Holding are jointly and severally liable for the entire amount of $93,506,632.00, and HDI, Jensvold, Giacomo Di Mase, Kaiser, and Kraus are jointly and severally liable for $24,414,522.00 of the amount. *Id.* at 5. Kraus now moves for judgment as a matter of law or, in the alternative, a new trial. Plaintiff opposes Kraus's motion.

## II.      MOTION FOR JUDGMENT AS A MATTER OF LAW
### A.      Standard

Pursuant to Rule 50(a) the Federal Rules of Civil Procedure, a party may move for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). "The motion must specify…the law and facts that entitle the movant to the judgment." *Id.* Judgment as a matter of law is proper if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that part on the issue." *Tatum v. City of Berkeley*, 408 F.3d 543, 549 (8th Cir. 2005); *see also Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012).

If a Rule 50(a) motion for judgment on the pleadings is denied, the movant "may file a renewed motion for judgment as a matter of law…." Fed. R. Civ. P. 50(b). "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law. *Id.* When considering a Rule 50(b) motion, the Court construes all factual issues in the light most favorable to the verdict. *Marez v. SaintGobain Containers, Inc.*, 688 F.3d 958, 963 (8th Cir. 2012). "The law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused." *Hunt v. Neb. Pub. Power 3 Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002) (citations omitted).

## B.    Discussion

### (1)    Waiver

Plaintiff argues Kraus's Rule 50(b) motion should be denied because his arguments were not raised in his Rule 50(a) motion. A Rule 50(a) motion must set forth "facts and law" demonstrating the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 50(a)(2). "[T]echnical precision" is not required, but "the motion must be 'specific enough' to notify the district court and the opposing party of the underlying issue." *Hyundai Motor Fin. Co. v. McKay Motors I, LLC*, 574 F.3d 637, 642 (8th Cir. 2009) (citations omitted). Consequently, the Eighth Circuit has held a "post-trial motion for judgment may not advance additional grounds that were not raised in the pre-verdict motion." *Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 834 (8th Cir. 2019) (quoting *Walsh v. Nat'l Comput. Sys., Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003)). That is, a "movant cannot use a Rule 50(b) motion 'as a vehicle to introduce a legal theory not distinctly articulated in its close-of-evidence motion for a directed verdict.'" *Id.* (citations omitted).

During trial, Kraus orally moved for judgment as a matter of law. Doc. #645, at 3-5. The entirety of his motion is as follows:

> Your Honor, plaintiff has now rested his case in chief. I hereby move the court for judgment on plaintiff's claim for civil conspiracy, Count 6, as a matter of law. Under Rule 50, if a party has been fully heard on an issue during a jury trial and the court finds a reasonable jury would not

have any legally sufficient evidentiary basis to find for the party at issue, the court may, A, resolve the issue against the party; and, B, grant a motion as a matter of law against the party on a claim or defense that under controlling law can be maintained or defeated only with a favorable finding on that issue.

All parties have agreed that the claim for civil conspiracy is governed by Missouri law. Under Missouri law, a civil conspiracy is an agreement or understanding between persons to do an unlawful act or to use unlawful means to do an unlawful act, Oak Bluff Partners v. Meyer. I can provide detailed citations to the court as well.

Plaintiff establishes a civil conspiracy if the following elements are satisfied: One, two or more persons; two, with an unlawful objective; three, after meeting of minds; four, commit to -- commit at least one act in furtherance of the conspiracy; and, five, the plaintiff is hereby injured.

Plaintiff must prove the conspiracy with clear and convincing evidence, Koehler v. Warren Skinner, Inc. and Chmieleski v. City Products Corporation.

In this case plaintiff not only has failed to present clear and convincing evidence for civil conspiracy, as he must under the law, he has presented almost no evidence at all for civil conspiracy. Given the paucity of evidence for civil conspiracy provided by plaintiff, I respectfully request judgment in my favor with extreme prejudice on Count 6 of plaintiff's amended complaint for civil conspiracy.

Barring that, alternatively, I respectfully request judgment in my favor with prejudice on Count 6 of the plaintiff's amended complaint for civil conspiracy.

Barring that, alternatively, I request judgment in my favor on Count 6 of plaintiff's amended complaint for civil conspiracy.

Doc. #645, at 3-5. The Court denied Kraus's motion, noting there was evidence that could support a verdict for Plaintiff or Defendants. *Id.* at 6.

Kraus contends his Rule 50(a) motion preserved the arguments he now raises in his Rule 50(b) motion. In his Rule 50(b) motion, Kraus argues he is entitled to judgment as a matter of law because (1) no third party was involved in the alleged civil conspiracy and his actions were not unlawful; (2) Plaintiff "failed to present any supportable theory and evidence of damages caused by the separate 2014-related conspiracy claim"; and (3) "Plaintiff's breach of fiduciary duty claims improperly 'bootstrapped' and duplicated Plaintiff's contractual claims," and no civil conspiracy claim can be maintained without an underlying tort. Doc. #679, at 13-26. To support his argument that he did not waive

4

the arguments he now raises, Kraus cites four cases. Doc. #691, at 9-10. But these cases present circumstances inapposite to those before the Court.

In *Kaplon v. Howmedica, Inc.*, the Eighth Circuit determined a party sufficiently raised "the proximate cause issue expressly in the context of arguing that the jury award was excessive." 83 F.3d 263, 266 (8th Cir. 1996). The Eighth Circuit also noted the defendant raised the "same issues" in its summary judgment motion" and "again at trial." *Id.* Whereas Kraus's Rule 50(a) motion lacked detail and failed to raise the arguments he attempts to raise in his Rule 50(b) motion, the Eighth Circuit did not indicate the defendant's Rule 50(a) motion lacked detail or failed to preserve arguments raised in the defendant's Rule 50(b) motion. In addition, the Eighth Circuit did not find the defendant, similar to Kraus, generally argued the plaintiff failed to meet her burden.

In *Jarvis v. Sauer Sundstrand Co.*, the Eighth Circuit concluded the district court did not abuse its discretion in finding the grounds raised in the defendant's Rule 50(b) motion "were fairly raised" in its Rule 50(a) motion. 116 F.3d 321, 323 n.4 (8th Cir. 1997). During trial, the defendant argued the plaintiff had "not produced any evidence, certainly not any sufficient evidence, by which a jury could return a verdict in favor of Plaintiff," and the plaintiff had "shown no evidence beyond [his] own personal belief that age discrimination was a factor to support his claim that age played any part whatsoever in his termination." *Id.* The Eighth Circuit found the district court did not abuse its discretion in finding the defendant's Rule 50(a) motion preserved the arguments raised in its Rule 50(b) motion because the plaintiff did not demonstrate he lacked notice of the "willfulness" issue or "did not have an opportunity to cure deficiencies in his proof." *Id.* While the defendant's Rule 50(a) motion is more akin to Kraus's Rule 50(a) motion, the defendant's Rule 50(a) motion placed the plaintiff on notice that the plaintiff's belief as to the basis of his discrimination claim was insufficient. As a result, Jarvis could cure that alleged deficiency in his proof. Here, Kraus's Rule 50(a) motion did not allow Plaintiff to cure the alleged deficiencies articulated in Kraus's Rule 50(b) motion.

In *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, the Eighth Circuit found that, although the defendants did not present a particular issue to the jury, the defendants "plainly raised" the issue in their Rule 50(a) motion. 908 F.3d 313, 323

(8th Cir. 2018).  The Eighth Circuit, however, did not delve into the specifics of the defendants' Rule 50(a) motion or compare arguments raised therein with the defendants' Rule 50(b) arguments.  *Id.*  Thus, Kraus's reliance on this case does not support his argument that he did not waive his Rule 50(b) arguments.

Finally, in *Hurst v. Dezer/Reyes Corp.*, the Eighth Circuit reiterated, "perfunctory written pre-verdict motions" are discouraged.  82 F.3d 232, 237 (8th Cir. 1996).  The Eighth Circuit noted that had the movant's "post-verdict motion been denied," the movant "would likely have failed to preserve *any* JAML issue for appeal."  *Id.* (citation omitted).  Nevertheless, the Eighth Circuit concluded the district court did not abuse its discretion in construing the Rule 50(a) motion as adequate because the non-moving party did not show "it lacked fair notice" on the issue raised in the Rule 50(b) motion.  *Id.*  The Eighth Circuit also noted the district court did not permit "oral argument to flesh out the basis for the pre-verdict motions."  *Id.*  Here, Kraus was given the opportunity to present oral argument in support of his Rule 50(a) motion, but during his oral argument, Kraus did not raise the arguments he now raises in his Rule 50(b) motion.  In addition, Kraus could have filed a written Rule 50(a) motion but chose not to do so.

Kraus orally presented his Rule 50(a) motion and provided argument and case citations.  Kraus did not identify specific facts or legal theories.  He simply argued Plaintiff failed to satisfy his burden of proof.  Such an argument does not satisfy the Rule 50(a) particularity requirements.  *Nassar v. Jackson*, 779 F.3d 547, 551 (8th Cir. 2015) (citations omitted) (holding a motion for a directed verdict based on a statement that plaintiffs failed to carry their burden on claims lacked the particularity that Rule 50(a) requires).  During his Rule 50(a) motion, Kraus did not mention the lack of third-party involvement, legality of actions, Plaintiff's damages theory, or nonexistence of an underlying tort.  Likewise, the cases cited by Kraus during his Rule 50(a) motion do not address the issues he now raises in his pending Rule 50(b) motion.  *See Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777 (Mo. banc 1999); *Koehler v. Warren Skinner, Inc.*, 804 S.W.2d 780 (Mo. Ct. App. 1991); *Chmieleski v. City Prods. Corp.*, 660 S.W.2d 275 (Mo. Ct. App. 1983).  For these reasons, the Court finds Kraus's Rule 50(a) motion did not preserve the arguments raised in his Rule 50(b) motion.

Kraus asks the Court to excuse his lack of compliance with Rule 50 because he was pro se at trial. Doc. #691, at 10. However, during trial, Kraus presented an opening statement, examined and cross-examined parties and witnesses, testified, objected to evidence, participated in bench conferences and the jury instruction conference, and gave a closing argument. *See, e.g.*, Doc. #641, at 81-89, 114-15; Doc. #642, at 8, 10-14, 17-18, 24-25, 27-30; Doc. #643, at 13-14, 36-58, 66, 74-78, 82-83, 85-90, 122-23, 128-64, 180, 195-98; Doc. #644, at 5-22, 38, 41-44, 48-49, 56-57, 60-61, 75-86, 88-89, 114-55, 173-90, 206-13, 216-55; Doc. #645, at 28-29, 34-37, 47-48, 50-67, 86-90, 119-20, 139, 149-60, 162-63, 168-70, 174; Doc. #646, at 3-11, 13-22, 47-48, 65-66, 72-73, 82-84, 88-89, 195-06, 210, 219, 228-29, 235-42; Doc. #647, at 11-14, 17-18, 33, 47, 67, 72, 79-86, 97, 100-99; Doc. #648, at 54-64, 85, 88. Of the five pro se Defendants, Kraus was the most active trial participant and, *inter alia*, was the only Defendant to cite case law and argue about judge versus jury determinations.

Although Kraus claimed he was knowledgeable about the applicable law during trial, he now asks the Court to disregard his purported knowledge of the law and liberally construe his Rule 50(a) motion. The Court declines to do so in these circumstances. Accordingly, the Court denies Kraus's Rule 50(b) motion because it raises arguments that were not included in his Rule 50(a) motion. Moreover, even if the Court were to liberally construe Kraus's Rule 50 motions, Kraus's argument that Plaintiff failed to meet his burden does not implicate, in any way, the arguments he raises in his Rule 50(b) motion. Finally, even if the Court were to find Kraus did not waive his Rule 50(b) arguments, those arguments fail on substantive grounds as discussed below.

## (2)    Civil Conspiracy Claim

### (a)  Third-Party Involvement, Agency, Independent Personal Stakes, and Conflicts

Kraus contends he is entitled to judgment as a matter of law on Plaintiff's civil conspiracy claim because no third party was involved. Plaintiff argues there was sufficient evidence at trial for the jury to conclude Kraus was not a formal agent of DuraSeal. Further, even if Kraus was a formal agent, Plaintiff argues sufficient evidence established Kraus had an independent stake in the object of the conspiracy, and thus, is liable. As noted by the Court in its summary judgment order:

7

"[T]here can be no conspiracy between an agent and a principal," and "[t]wo entities that are not legally distinct cannot conspire with one another." *8000 Md., LLC*, 292 S.W.3d at 452 (quoting *Mika v. Cent. Bank of Kan. City*, 112 S.W.3d 82, 94 (Mo. Ct. App. 2003)). "[A] corporation cannot conspire with its own employees." *Id.* But one exception to this general rule is "when an agent has an independent personal stake in achieving the object of the conspiracy." *Id.* (citation and internal quotations omitted). That is, "the agent's independent personal stake must be in a legally distinct organization." *Id.* (citation omitted).

Doc. #434-1, at 44.

To support his argument that a third party must be involved, Kraus solely relies on *Missouri Highway and Transportation Commission v. Commerce Bank of Kansas City, N.A.*, 763 S.W.2d 172, 177 (Mo. Ct. App. 1988). In *MHTC*, the plaintiff and the defendants entered into an agreement. *Id.* at 176. The plaintiff alleged the defendants conspired with one another to agree to breach their promise to the plaintiff in order to injure the plaintiff. *Id.* The plaintiff did not allege a third party was involved in the conspiracy. *Id.*

In *MHTC*, the Missouri Court of Appeals was the first Missouri court to determine "whether contracting parties may be held liable for civil conspiracy when there is no third party involved in the conspiracy." *Id.* at 177 (noting "Missouri courts have not directly addressed the question" of "whether contracting parties may be held liable for civil conspiracy when there is no third party involved in the conspiracy"). The appellate court held "one party to a contract may not have a cause of action against other parties to the same contract under a theory of unlawful civil conspiracy unless a third party is involved in the conspiracy." *Id.*

*MHTC* presents circumstances dissimilar to the evidence presented at trial in this matter when construing all factual issues in the light most favorable to the verdict as the Court must do. First, *MHTC* involved a conspiracy to breach an agreement. Here, Plaintiff presented evidence that Kraus and others conspired to eliminate minimum purchase obligations, create rights to manufacture and produce Xurex's products, and execute the 2014 Amendment. No claim of conspiracy to breach a contract was presented. Rather, the conspiracy claim centered around the formation of a new contract as well as the elimination of minimum purchase obligations and the creation of rights to manufacture and produce Xurex products.

Second, in *MHTC*, there is no indication that either party, or an agent or employee thereof, had an "independent stake in achieving the object of the conspiracy." *Mika v. Cent. Bank of Kan. City*, 112 S.W.3d 82, 94 (Mo. Ct. App. 2003) (quoting *Metts v. Clark Oil & Refin. Corp.*, 618 S.W.2d 698, 702 (Mo. Ct. App. 1981)). Thus, the *MHTC* Court did not address the independent personal stake exception to the general rule that a corporation cannot conspire with its own employees. *Id.* at 94-95.

Third, unlike the matter before this Court, the relationship between the parties to the contract in *MHTC* was straightforward, and there was no mention of either party having a conflict of interest. The plaintiff, MHTC, was a promisee, and the defendants, Commerce Bank and A.H. Myers, were joint promisors. 763 S.W.2d at 176. There is no suggestion that either party was an agent for, an employee of, paid by, related to, and/or working with the other party. Accordingly, the *MHTC* Court did not examine whether the parties were not legally distinct, and therefore, could have conspired with one another. *See Mika*, 112 S.W.3d at 94 (holding "[t]wo entities that are not legally distinct cannot conspire with one another.") (citation omitted).

The facts at trial established an intricate web of connections among those who were parties to the agreements, those involved in the elimination of minimum purchase obligations and the creation of rights to manufacture and produce Xurex products, and those who were not parties to the agreement but were involved in the events leading up to and including the contracts. In addition, the evidence showed individuals had independent personal stakes in achieving the conspiracy's objective, individuals had conflicts of interest, and individuals without independent personal stakes and/or conflicts of interest knew about the conflicts but willingly participated in the conspiracy. The Court will not attempt to recite all evidence supporting the jury's verdict finding in favor of Plaintiff on his conspiracy claim against Kraus. But the Court highlights some of the more significant events.[2]

Jose Di Mase contacted Lee Kraus on "several occasions during 2010" about evaluating a business opportunity involving DuraSeal Pipe. Doc. #643, at 129-31. In

---

[2] The Court also cites to portions of the record, but the citations are not comprehensive. Because Kraus brings the pending motion, the Court mainly focuses on events in which Kraus was involved and does not include evidence presented against other parties only.

October 2010, Jose Di Mase hired Kraus as a consultant to help him acquire DuraSeal Pipe.  Doc. #642, at 63; Doc. #643, at 154; Doc. #647, at 20, 81, 113.  Per the agreement, Kraus would receive a ten percent profit interest in DuraSeal Holding.  Doc. #643, at 143-44.

That same month, Tristram Jensvold, who was Jose Di Mase's son-in-law, communicated with Jose Di Mase about combining and controlling both Xurex and DuraSeal Pipe.  Doc. #642, at 68-69.  In December 2010, Jose Di Mase formed DuraSeal Holding, which purchased DuraSeal Pipe.  *Id.* at 73.  When DuraSeal Holding purchased DuraSeal Pipe, it also bought DuraSeal Pipe investors' Xurex shares.  *Id.* at 74.[3]  Jose Di Mase gave Jensvold authority to negotiate a license agreement between DuraSeal and Xurex.  *Id.* at 39-40, 44, 79-80.

On December 31, 2010, DuraSeal and Xurex entered into a global license agreement, giving DuraSeal an exclusive license to use Xurex's products outside North America.  *Id.* at 42, 75; Doc. #643, at 59.  In exchange, DuraSeal agreed to make minimum monthly purchases.  Doc. #642, at 75.  DuraSeal also agreed to retain Kraus as a non-executive director, which Kraus described as a "key man clause," for five years.  Doc. #643, at 146-47; Doc. #647, at 20, 114.  According to Kraus, it was then that he "took on a fiduciary obligation to DuraSeal."  Doc. #647, at 115.  As of December 2010, Kraus was providing consulting services for Jose Di Mase, was paid by Jose Di Mase, and was a non-executive director for and had a fiduciary obligation to DuraSeal.

In March 2011, Jensvold emailed Kraus, Giacomo Di Mase (Jose Di Mase's son), and Joe Johnston (Xurex's CEO) to ensure they "are all acting in congruence."  Doc. #642, at 89-93; Doc. #643, at 62, 105-06, 149-50, 166-67; Doc. #646, at 221-22.  Among other things, Jensvold stated, "[s]ince The Di Mase Group made the acquisition of [DuraSeal,] our general strategy" includes "[c]omplet[ing] the take over of Xurex."  Doc. #642, at 89-90.

In April 2011, changes were made to the Xurex board.  *Id.* at 93-94; Doc. #643, at 155-56.  Jensvold and Johnston successfully lobbied to add Dietmar Rose to the Xurex board.  Doc. #643, at 106, 113.  In the latter part of 2011, Rose and Jensvold

---

[3] Hereinafter, "DuraSeal" refers to both DuraSeal Pipe and DuraSeal Holding.

negotiated a new license agreement. *Id.* at 24-25, 96, 113. During the negotiations, Johnston participated, supplied information to "both sides," and "helped them with… putting all the data and information together." *Id.* at 114-15, 123. Johnston admitted he had a conflict at the time – that is, he was DuraSeal's CEO <u>and</u> Xurex's CEO. *Id.* at 119-20, 123-25, 170-71.[4] In the latter part of 2011, Xurex potentially filing for bankruptcy was discussed, and two Xurex board members resigned, claiming they were kept in the dark about operations. Doc. #642, at 96; Doc. #643, at 106-07, 171; Doc. #645, at 74-75; Doc. #647, at 22-23.

In January 2012, an amended license agreement was executed, and DuraSeal's minimum purchase obligations were greatly reduced. Doc. #642, at 76-77, 97; Doc. #643, at 70; Doc. #646, at 177. The agreement was signed by Rose and Jensvold. Doc. #642, at 96; Doc. #643, at 70; Doc. #647, at 23-24.[5] After the agreement was executed, meeting minutes were backdated to reflect someone else became Xurex's CEO before the agreement was signed. Doc. #643, at 119-20, 123-25, 170-71; Doc. #645, at 173-74. Had the 2010 Agreement not been amended, Xurex would have received more than sufficient revenue. Doc. #643, at 172.

In August 2012, Kraus signed an advisory agreement with HDI where he was paid $6,000 monthly for working "approximately 20 hours per month." Doc. #686-9.[6]

---

[4] Kraus also testified that Johnston was "in a conflicted situation." Doc. #647, at 152-56.

[5] Jose Di Mase delegated to Jensvold the power to act on DuraSeal's behalf and "perform…the acts necessary to the completion of the acquisition or management of companies DuraSeal and Xurex…." Doc. #686-14.

[6] Kraus testified his involvement in this matter as "episodic" from 2010 through November 2013, when he "became more directly involved." Doc. #643, at 136; Doc. #647, at 115-16. His testimony about "episodic" involvement belies the advisory agreement he executed in August 2012. Doc. #686-9. Also, Kraus became a director of DuraSeal's board at the close of 2010, and as he testified, he then had a fiduciary obligation to DuraSeal. Doc. #647, at 115. Presumably, Kraus was apprised of DuraSeal's operations and plans throughout 2011, 2012, and 2013. In addition, the evidence demonstrated Jose Di Mase hired Kraus in 2010 to advise him and/or "close the transaction" of DuraSeal Holding acquiring DuraSeal Pipe; Kraus traveled to an "oil patch" and talked with customers; he advised Jose Di Mase about the transaction, including making recommendations; he was privy to discussions about ultimately taking control of Xurex; he attended a presentation in Kansas City about Xurex's technology; he traveled to Las Vegas in 2012 at Jose Di Mase's invitation (although denied attending a meeting that took place there); and he received and sent communications

Kraus was paid by HDI, which Jose Di Mase described as his "personal investment vehicle." Doc. #642, at 38, 63-64; Doc. #643, at 154-55. In October 2012, Giacomo Di Mase told Kraus and others: "our final goal" is to "own the IP" of Xurex. Doc. #642, at 98-99; Doc. #643, at 154-56; Doc. #646, at 226-27; Doc. #686-17.

In April 2013, Jose Di Mase sent an email to Jensvold, Kraus, and Giacomo Di Mase discussing the possible purchase of twelve million series B shares and noting an additional two million shares would have to be purchased to obtain fifty percent of Xurex. Doc. #643, at 62-63. About one month later, Jensvold reported the majority position with Xurex was obtained, which is "very good news" and the result of several years' work. *Id.* at 67.

In June 2013, DuraSeal sent an email to shareholders entitled "THE PLAN TO FIX XUREX – THE DURASEAL CAMPAIGN." Doc. #643, at 178-79; Doc. #686-3. Therein, DuraSeal represented its nominees to the Xurex board, which included Kaiser, Jensvold, and Steve McKeon, will serve the best interests of all stockholders. Doc. #643, at 178-81. At the time, Jensvold was a member of DuraSeal's board, and McKeon was a lobbyist for DuraSeal. *Id.* Although the possibility of Xurex filing for bankruptcy had been discussed, DuraSeal told shareholders it had "no intention, nor expectation, that Xurex will become bankrupt." Doc. #686-3. DuraSeal also promised to "forego its right to purchase Xurex's intellectual property for $200,000 as a result of any bankruptcy during any period of time in which Xurex's board of directors is comprised of [DuraSeal's] nominees." *Id.* (emphasis eliminated). In addition, DuraSeal committed to implement "a transparent review process for" transactions negotiated between Xurex and DuraSeal. *Id.*

Yet, one month later, in a July 2011 communication to Kraus, DuraSeal "was giving serious consideration to filing Chapter 11 bankruptcy…." Doc. #647, at 134. In August 2013, DuraSeal's CFO emailed Kraus, copying Jose Di Mase, saying DuraSeal does not own Xurex's intellectual property but it controls the company that does. Doc. #643, at 158. Around the same time, there was another effort to replace board

---

with Jensvold, Johnston, Jose Di Mase, Giacomo Di Mase, and others throughout 2011, 2012 and 2013. *See*, *e.g.*, Doc. #642, at 44-45; Doc. #643, at 129-40, 138-41, 148-63; Doc. #647, at 81.

members.  Doc. #643, at 155-56.  Rose left the board, and Jensvold, who was a DuraSeal employee and director, was proposed to be on the Xurex board.  *Id.*

In September 2013, Kaiser became Xurex's CEO and a member of the Xurex board.  Doc. #642, at 36; Doc. #646, at 133.  Also, DuraSeal's other nominees to the Xurex board – Jensvold, Giacomo Di Mase, and McKeon – were installed.  Doc. #643, at 183.  At the same time, Giacomo Di Mase, disregarding an attorney's directive not to share information with Kaiser or McKeon specifically, forwarded the attorney's email to Kaiser and McKeon.  Doc. #686-19.  The attorney stated, "while we want to be sure that Xurex…has independence from [DuraSeal], you should be wary of Xurex having too much independence….  We need to discuss the best way to keep Xurex under appropriate control, but with sufficient independence to keep you out of trouble."  *Id.*

In October 2013, DuraSeal notified Xurex that DuraSeal had entered into an uneconomic condition, per the 2012 Amendment.  Doc. #644, at 235-39; Doc. #645, at 43-45.  Consequently, DuraSeal and Xurex agreed to discontinue DuraSeal's minimum purchase requirements and royalty payments, and DuraSeal would make loans to Xurex.  Doc. #644, at 241; Doc. #645, at 45-46.

In November 2014 (roughly five months after DuraSeal promised shareholders it would not put Xurex in bankruptcy and two months after DuraSeal's nominees were installed), Kaiser, Giacomo Di Mase, Jensvold, and McKeon communicated with an attorney about Xurex possibly filing for bankruptcy.  Doc. #643, at 183-85; Doc. #644, at 22-23; Doc. #686-20.  According to Giacomo Di Mase, the "cash situation was really, really bad."  Doc. #643, at 184.  That same month, Kraus agreed to provide "consulting services…to DuraSeal part time to help [Jose] Di Mase…."  *Id.* at 158-59; Doc. #647, at 120.  Instead of HDI paying Kraus, Jose Di Mase paid him.  Doc. #647, at 120.

In January 2014, discussions about Xurex filing for bankruptcy continued.  Doc. #643, at 184-85; Doc. #686-23.  In fact, Jensvold sent an email stating, "we have decided to seriously consider a Chapter 11 [bankruptcy] for Xurex in Missouri."  Doc. #686-23.  Copied on this email were McKeon, Giacomo Di Mase, and Kaiser.  *Id.*  Also in January 2014, Kaiser forwarded an email to Jensvold wherein Kaiser received legal advice about a demand for attorneys' fees that Xurex received.  Doc. #686-22.

13

In or about June 2014, Kaiser successfully located and obtained a copy of Xurex's intellectual property.  Doc. #644, at 59.  Kaiser informed Giacomo Di Mase, Kraus, and Jensvold that Xurex's formula would be "retained in the DuraSeal firesafe." Doc. #643, at 190-91; Doc. #644, at 59-60; Doc. #647, at 158-64.  At the time, Kaiser was Xurex's CEO, Giacomo Di Mase and Jensvold were on the DuraSeal boards, and Kraus was DuraSeal's CEO (a title Kraus claimed was "nominal" or "ceremonial" because there was no CEO title in the company's operating agreement) and was also working directly for Jose Di Mase.  Doc. #647, at 161-62.

In the summer of 2014, the possibility of Xurex filing for bankruptcy continued to be discussed.  Doc. #644, at 254; Doc. #647, at 74.  In July 2014, Jensvold sent a text message to Kraus, Kaiser, and Jose Di Mase stating he had an in-depth discussion with a Kansas City law firm and would have a bankruptcy report by week's end.  Doc. #644, at 61; Doc. #686-26.  During the same month, the possibility of DuraSeal purchasing and the potential cost to purchase the use of Xurex's intellectual property once Xurex filed for bankruptcy was discussed.  Doc. #643, at 193-94; Doc. #647, at 190-92; Doc. #686-25.  At this time, Kraus and Jose Di Mase were not on Xurex's board; yet Jensvold, a Xurex board member, was communicating with them about Xurex possibly filing for bankruptcy.  Doc. #644, at 61-63.

The discussions about a possible Xurex bankruptcy triggered Kraus and Kaiser to review and consider modifications to the 2012 Amendment.  Doc. #644, at 80, 254; Doc. #647, at 192-93.  Kraus and DuraSeal's counsel began drafting what later became known as the 2014 Amendment.  Doc. #644, at 71.  Kaiser did not negotiate anything related to the 2014 Amendment.  *Id.* at 67-68.

In August 2014, Giacomo Di Mase sent a text message Jose Di Mase, who was not a Xurex board member, about bankruptcy options for Xurex.  Doc. #647, at 73-74; Doc. #686-26.  In early September 2014, Jensvold emailed Jose Di Mase and Kraus (who was not the Xurex board), stating he had been working with Kaiser and Jensvold on bankruptcy "stuff."  Doc. #647, at 75-78; Doc. #686-29.  Jensvold also discussed his involvement with the negotiations related to the 2014 Amendment.  Doc. #647, at 77-78; Doc. #686-29.  Nevertheless, during the spring and summer of 2014, Jose Di Mase continued to purchase more of Xurex's stock.  Doc. #643, at 192; Doc. #646, at 213-14.

14

On September 15, 2014, a draft of the 2014 Amendment was sent to Kaiser and Kraus. Doc. #644, at 63-64. Kaiser forwarded "[a] redline version of the license agreement" to Giacomo Di Mase, Jensvold, and McKeon. *Id.* at 64; Doc. #686-31. Six days later, Kaiser emailed Giacomo Di Mase, Jensvold, and McKeon, stating the 2014 Amendment needed to be completed before Xurex filed for bankruptcy and should not be signed on the day Xurex files for bankruptcy. Doc. #644, at 64; Doc. #686-32. The Xurex board held a conference call to discuss the draft agreement, and Jensvold and Giacomo participated in the call. Doc. #644, at 65; Doc. #647, at 176.

On September 23, 2014, Kaiser sent an email to Kraus providing the status of the license discussions from Xurex's side. Doc. #647, at 176; Doc. #686-33.[7] Kaiser stated Giacomo Di Mase requested a conference call to discuss the license agreement, but he had not received "input" from Jensvold or McKeon. Doc. #686-33. Kraus testified at trial that he knew "conflicted directors were involved in reviewing, discussing, and concurring in the 2014 amendment." Doc. #647, at 179.

On September 24, 2014, Kaiser emailed Kraus, telling him the bankruptcy attorney confirmed "any funds DuraSeal would provide to Xurex in excess of purchases of raw materials or assets would not put DuraSeal in a preferential position as a creditor." Doc. #644, at 74-75; Doc. #647, at 187-89; Doc. #686-36. Kaiser further stated: "As far as the risk of internal documentation being required by the trustee, [the attorney] felt that such a request would only happen if dissident shareholders filed against Xurex, or DuraSeal, or both claiming that the value of Xurex, and particularly it's [sic] IP, were extremely more valuable." Doc. #644, at 73-74; Doc. #647, at 187-89; Doc. #686-34; Doc. #686-36. Although at trial Kaiser did not recall why he asked the bankruptcy attorney this question, Kaiser testified during his deposition that he asked about internal documentation because he was concerned about potential litigation. Doc. #644, at 73-74. In February 2016, more than a year after Xurex filed for

---

[7] Kraus testified he did not receive Kaiser's email because the email address to which the communication was sent was not his. Doc. #647, at 175. After Plaintiff presented evidence establishing Kraus, contrary to his testimony, used the email address he claimed was not his, Kraus admitted he used the email address for a brief time before changing the email address. *Id.* at 177-78, 197-98; *see also* Doc. #686-24.

bankruptcy, Kraus forwarded Kaiser's email to Christine Brandow with DuraSeal, stating, "I hope Len was right." Doc. #644, at 88; Doc. #647, at 189.

On September 25, 2014, the 2014 Amendment was executed. Doc. #647, at 182, 187; Doc. #686-8. Kaiser signed the agreement as Xurex's CEO. Doc. #686-8. Kraus signed the agreement as DuraSeal's CEO. Doc. #647, at 187; Doc. #686-8. In addition to Kraus testifying his CEO title was "nominal" or ceremonial," there was no evidence that Kraus was DuraSeal's agent when he signed the agreement. But there was evidence that Kraus was working as a consultant for and was paid by Jose Di Mase at the time he signed the 2014 Amendment. Although DuraSeal promised shareholders in 2013 that all transactions between DuraSeal and Xurex would be reviewed by a third party, no person outside of DuraSeal or Xurex reviewed the 2014 Amendment. Doc. #643, at 180-81; Doc. #686-2, at 74; Doc. #686-3.

The 2014 Amendment continued to give DuraSeal an exclusive license to use Xurex's products in the oil and gas industry, but DuraSeal's minimum purchase requirements were eliminated, and revenue sharing was suspended. Doc. #647, at 92-95, 98, 180-82. Among other things, the 2014 Amendment also gave DuraSeal ownership of any improvements or modifications that DuraSeal made to Xurex's intellectual property and the right to manufacture Xurex products. Doc. #647, at 41-43, 84, 139-42, 179-85. Under the 2014 Amendment, DuraSeal had exclusive license to most Xurex products but had no obligation to buy Xurex products. At trial, Kaiser conceded Xurex derived no benefit from the 2014 Amendment; only DuraSeal benefitted from the agreement. Doc. #644, at 68-69. Weeks after the 2014 Amendment was executed, Xurex filed a Chapter 7 bankruptcy.

At the close of trial, the Court instructed the jury about corporations, agents, and an exception to the rule that a corporation cannot conspire with its employees or agents. Specifically, the Court instructed on the following: "[a] corporation only acts through its agents or employees"; a corporation's agent or employee "may bind the corporation by acts and statements made while acting within the scope of the authority delegated to the agent by the corporation, or within the scope of his or her duties as an employee of the corporation"; "an agent is a person or entity acting for and representing another by the latter's authority"; and "a corporation cannot conspire with its own employees or

16

agents unless the employee or agent has an independent personal stake in achieving the object of the conspiracy." Doc. #625, at 20. Accordingly, the jury considered and determined whether Kraus was an agent, and if so, whether Kraus acted within the scope of the authority delegated to him. The jury also examined and decided whether Kraus had an independent personal stake in achieving the conspiracy's objective.

The Court has considered the applicable and the evidence presented at trial. When construing all factual issues in the light most favorable to the jury verdict, the Court finds there was sufficient evidence for a reasonable jury to find in favor Plaintiff on his civil conspiracy claim against Kraus.

### (b)    Legality of Acts

Kraus also maintains he is entitled to judgment as a matter of law on Plaintiff's civil conspiracy claim "because there was no evidence, and the jury was not asked to find, that Kraus engaged in any unlawful actions nor that he used '*unlawful means* to do an act which is lawful.'" Doc. #679, at 15 (citation omitted). Kraus argues his overt acts – drafting and executing a contract – are not unlawful; he was simply "doing his job." *Id.* at 15-17.

According to the Missouri Supreme Court, a civil conspiracy exists when "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) [the other party] was thereby damaged." *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012) (citation omitted). These are the same elements Kraus stated during trial: "One, two or more persons; two, with an unlawful objective; three, after meeting of minds; four, commit to – commit at least one act in furtherance of the conspiracy; and, five, the plaintiff is hereby injured." Doc. #645, at 4. Yet, Kraus now claims in his pending motion that Plaintiff had to establish Kraus's actions were unlawful. Because Kraus's current argument was not presented during trial and actually diverges from his argument at trial, the Court denies Kraus's motion on this issue.

Even if the Court were to overlook Kraus's change of argument, his motion fails on substantive grounds. The parties dispute whether Plaintiff had to establish Kraus had an unlawful objective, committed an unlawful act, and/or used unlawful means to

17

accomplish a lawful act. The Missouri Supreme Court resolves this dispute: "The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy or concerted design resulting in damage to plaintiff." *W. Blue Print*, 367 S.W.3d at 22 (citation omitted). "The term unlawful, as it relates to civil conspiracy, is not limited to conduct that is criminally liable, but rather may include individuals associating for the purpose of causing or inducing a breach of contract or business expectancy." *Id.* (quoting *Lyn-Flex W., Inc. v. Dieckhaus*, 24 S.W.3d 693, 700-01 (Mo. Ct. App. 1999).

Plaintiff did not present evidence or argue Kraus signing the 2014 Amendment was unlawful. Instead, Plaintiff presented evidence, as set forth *supra*, section II(B)(2)(a), that Kraus and others agreed to eliminate the minimum purchase obligations and/or create the rights to manufacture and produce Xurex products; Kraus agreed with the purpose of eliminating of the minimum purchase obligations and/or create the rights to manufacture and produce Xurex products; Kraus knew Kaiser had a fiduciary duty to Xurex; Kraus knew the elimination of the minimum purchase obligations, the creation of the rights to manufacture and produce Xurex products, and/or the 2014 Amendment were/was not in Xurex's best interests; in furtherance of the agreement, Kraus drafted or executed the 2014 Amendment; the 2014 Amendment was executed; and Xurex was damaged. *See* Doc. #625, at 30.[8] Accordingly, Kraus's argument related to the legality of his actions fails. The Court denies Kraus's motion for judgment as a matter of law related to Plaintiff's civil conspiracy claim against Kraus.

### (3)    Damages Caused by 2014-Related Conspiracy Claim

After trial, Plaintiff moved for entry of default judgment against DuraSeal Pipe, DuraSeal Holding, HDI, and Jensvold on Counts VII, XI, and XII. Docs. #638-39. Plaintiff asked for default judgment against the DuraSeal entities in the amounts of $93,506,632.00 for their conduct associated with the 2012 Amendment and $24,414,512.00 for their conduct leading up to and including the 2014 Amendment. Doc. #638. Plaintiff also asked for default judgment against HDI and Jensvold in the

---

[8] The jury was also instructed on what fiduciary duties are. Doc. #625, at 21.

amount of $24,414,522.00. Docs. #638-39. The Court granted Plaintiff's motions but deferred consideration of damages and requested the parties' input on the issue of damages. Doc. #659, at 7-8, 14-16.

After considering the parties' filings and the applicable law, the Court issued an Order clarifying the jury's verdicts on damages and Plaintiff's total damages recovery. Doc. #664. Among other things, the Court determined the following:

> The jury's two damage awards compensated Plaintiff for damages caused by different conduct by different people at different times based on different transactions. Regarding Plaintiff's civil conspiracy and breach of fiduciary duty claims, which were based on conduct leading up to and including execution and approval of the 2012 Amendment, the jury found Jose Di Mase's conduct directly resulted in damages to Plaintiff in the amount of $93,506,632.00. Doc. #625, at 24-25, 32; Doc. #630, at 1-2. Regarding Plaintiff's other civil conspiracy and breach of fiduciary duty claims, which were based on conduct leading up to and including the execution of the 2014 Amendment, the jury found Jose Di Mase's, Giacomo Di Mase's, Kaiser's, and Kraus's conduct damaged Plaintiff in the amount of $24,414,522.00. Doc. #627, at 27-32; Doc. #630, at 3-4. In neither verdict was the jury asked to consider the conduct at issue in the other verdict.

> Although the claims submitted to the jury related to contracts and involve entering contracts, the claims were independent of Plaintiff's breach of contract claims. Contrary to Kraus's argument, the jury's finding against Jose Di Mase in Verdict Form A did not equate to the jury finding the 2012 Amendment was valid. The jury was not asked to make such a finding. Moreover, the jury's decision in Verdict Form A did not entitle Defendants to enter civil conspiracies or breach fiduciary duties after the 2012 Amendment was executed.

> However, Plaintiff's damage theories for his civil conspiracy and breach of fiduciary duty claims were identical to his breach of contract damage theories. As Kraus points out, Plaintiff's damage calculations, which the jury awarded, incorporated lost profits and lost royalty income that overlapped time periods. One damage calculation included lost profits and lost royalty income from 2010 through 2018 and lost business value from 2016 to 2018. The other damage calculation included, inter alia, lost royalty income, lost profits, and lost fees from 2011 through 2022. Consequently, Plaintiff is recovering separate damage awards that overlap in part and seek the same types of relief (albeit in different amounts) for the same injury. Plaintiff, of course, is not entitled to this. *See EFCO Corp.*, 219 F.3d at 742 (citation omitted).

> The appropriate remedy is for this Court to enter a judgment on the larger of the two amounts. *See Landmark Infrastructure Holding*, 933 F.3d

19

at 911-12; *Structural Polymer Grp.*, 543 F.3d at 1000. Accordingly, the Court enters judgment for Plaintiff in the total amount of $93,506,632.00 for his claims of civil conspiracy and breach of fiduciary duty. At Plaintiff's suggestion, the Court clarifies that Plaintiff's total recovery for all claims, including the claims tried to the jury and the claims on which the Court has entered default judgment, is $93,506,632.00. Jose Di Mase, DuraSeal Pipe, and DuraSeal Holdings are jointly and severally liable for the entire amount of $93,506,632.00. HDI, Jensvold, Giacomo Di Mase, Leonard Kaiser, and Lee Kraus are jointly and severally liable for $24,414,522.00 of the judgment amount.

*Id.* at 4-5.

Plaintiff's pending motion reiterates the same arguments he raised in response to the Court's request for the parties' input. *Compare* Doc. #661 *with* Doc. #679, at 18-23. The Court stands by its prior decision (Doc. #664) and denies Kraus's motion for judgment as a matter of law with regard to Plaintiff's damages theories.

## (4)      Bootstrapped and Duplicative Claims

Kraus claims entitlement to judgment as a matter of law because Plaintiff's breach of fiduciary duty claims were improperly "bootstrapped" and duplicated the breach of contract claims. "It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) (citations omitted). Breach of fiduciary duty claims cannot be maintained in conjunction with breach of contract claims if "the two claims overlap completely and arise from the same underlying conduct or nucleus of operative facts." *Grunstein v. Silva*, No. CIV.A. 3932-VCN, 2009 WL 4698541, at *6 (Del. Ch. Dec. 8, 2009) (citations omitted). To determine whether a breach of fiduciary duty claim is duplicative of a breach of contract claim, "the principal inquiry…is whether the fiduciary duty in the complaint arises from general fiduciary principles or from specific contractual obligations agreed upon by the parties." *Id.*

Kraus argues Plaintiff's breach of fiduciary duty claims were "nothing more than contractual-based conduct that improperly overlapped with and duplicated breach of contract claims" and sought the same relief as his breach of contract claims. Doc.

#679, at 24-25.  He argues that because Plaintiff's breach of fiduciary duty claims are duplicative of the contract claims, Plaintiff was barred from bringing the breach of fiduciary duty claims.  If Plaintiff's breach of fiduciary duty claims are barred, Plaintiff cannot maintain a civil conspiracy claim against Kraus because there is no underlying tort.  This is because a "[c]ivil conspiracy is not itself actionable in the absence of an underlying wrongful act or tort."  *Hamilton v. Spencer*, 929 S.W.2d 762, 767 (Mo. Ct. App. 1996) (citation omitted).

Plaintiff's breach of fiduciary duty claims are not duplicative of his breach of contract claims.  When viewing the evidence in the light most favorable to the jury's verdict, the evidence established that those with fiduciary duties did not use the amount of care an ordinarily careful and prudent would have used, disregarded their duties to Xurex, were disloyal and/or did not act in good faith, failed to make decisions in Xurex's best interests, participated in conduct that harmed Xurex, and acted in their personal interests.  *See supra*, section II(B)(2)(a).  Plaintiff's breach of fiduciary duty claims did not arise from the same facts as his breach of contract claims.  Instead, his breach of fiduciary duty claims depended on additional facts and were broader in scope than the breach of contract claims.  Further, general fiduciary principles, not the contracts at issue, gave rise to those Defendants' duties.  Accordingly, the Court denies Kraus's motion for judgment as a matter of law with regard to his argument that the breach of fiduciary duty claims were duplicative of the breach of contract claims.

### III.    ALTERNATIVE MOTION FOR NEW TRIAL
#### A.    Standard

Rule 59(a) provides that the court may grant a new trial on some or all issues after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  A new trial under Rule 59 "is warranted when the outcome is against the great weight of the evidence so as to constitute a miscarriage of justice."  *Bank of Am., N.A., v. JB Hanna LLC,* 766 F.3d 841, 851 (8th Cir. 2014).  In making this determination, the court relies on its own reading of the evidence, including weighing the evidence and evaluating the witnesses' credibility. *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 459 (8th Cir. 2016).

## B. Discussion

Kraus presents five issues in favor of a new trial: (1) admission of Plaintiff's false and confusing testimony; (2) instructional error; (3) evidentiary errors; (4) the jury's damages award; (5) inapplicability of "entire fairness"; (6) failure to issue a pretrial ruling on whether business judgment rule or entire fairness applied; and (7) cumulative error.

### (1)   Plaintiff's Testimony

Kraus contends a new trial is warranted because the Court erred in admitting Plaintiff's false and confusing testimony that Kraus owed a fiduciary duty to Xurex. Doc. #679, at 26-27. At trial, Kraus called Plaintiff as a witness. Doc. #647, at 100. During a bench conference shortly after Plaintiff took the stand, the Court asked Kraus what he intended to cover with Plaintiff. Doc. #647, at 102. Kraus sought to ask Plaintiff about his investigation, Xurex product failures, evidence obtained after the lawsuit was filed, and the nature of Plaintiff's claim against him. *Id.* at 102-08. The Court prohibited Kraus from asking about Plaintiff's investigation, including the thoroughness thereof, or seek Plaintiff's comment on evidence. *Id.* at 104-08. Because Plaintiff serves as Bankruptcy Trustee for Xurex, Plaintiff did not have first-hand knowledge; thus, the Court prohibited Kraus from asking about information of which Plaintiff did not have first-hand knowledge. *Id.* at 107-08.

Immediately after the bench conference, Kraus asked Plaintiff if Kraus had a fiduciary duty to Xurex. *Id.* at 108. Plaintiff's counsel objected, but the Court allowed Plaintiff to answer if he could. *Id.* Plaintiff responded, "As is set out in the complaint, it's the position that I take, Mr. Kraus." *Id.* at 108. Kraus asked the question again, and Plaintiff responded, "Yes, as set out in the complaint." *Id.* Kraus then asked Plaintiff to identify the paragraph in the Amended Complaint, presumably that alleged Kraus had a fiduciary duty to Xurex, but the Court stopped Kraus's question, stating, "[w]e're not going to go into that, Mr. Kraus. Let's move on to your next question." *Id.*

To support his motion for new trial, Kraus contends Plaintiff's testimony coupled with a comment made by Plaintiff's counsel during closing argument and two references in the jury instructions led the jury to mistakenly believe Kraus had a fiduciary duty to Xurex. Doc. #679, at 26-30. During closing arguments, Plaintiff's counsel, when

referring to the jury instruction defining fiduciary duty, stated, "they have to act in good faith, and they can't act for any purpose other than advancing the best interests of Xurex and its shareholders." Doc. #648, at 31. Kraus claims the reference to "they" is overbroad and inaccurate because he had no fiduciary duty to Xurex.

With regard to the jury instructions, Kraus contends Instructions 1 and 29 contained incorrect information. Instruction No. 1, which was read before opening statements, provided a brief summary of the matter. Doc. #625, at 1. In relevant part, Instruction No. 1 stated the following:

> This is a civil case brought by Plaintiff Jerald Enslein, who is the Chapter 7 Trustee in the bankruptcy of Xurex, Inc., against Defendants Jose Di Mase, Giacomo Di Mase, Joe Johnston, Lee Kraus, Leonard Kaiser, Tristram Jensvold, DuraSeal Pipe Coatings Company LLC, DuraSeal Holding S.r.L., and HDI Holding Development Investment, S.A. for breach of fiduciary duty to Xurex, Inc. and conspiracy to breach fiduciary duty to Xurex, Inc. The defendants deny the plaintiff's allegations. It will be your duty to decide from the evidence whether the plaintiff is entitled to a verdict against the defendants.

*Id.* Regarding Instruction No. 29, Kraus points to the introductory sentence to the verdict director, which states, "On Plaintiff's claim against Lee Kraus for conspiracy to breach fiduciary duties to Xurex related to…." *Id.* at 31. Kraus argues both instructions suggested he owed a fiduciary duty to Xurex.

The Court first addresses Kraus's argument that the Court erred in admitting Plaintiff's testimony that Kraus had a fiduciary duty to Xurex. First, it was Kraus who elicited the testimony that was supposedly admitted in error. Still, once Plaintiff answered Kraus's question, Kraus did not ask the Court to strike the testimony.[9] "A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and: (1) if the ruling admits evidence, a party, on the record: (A) timely objects or moves to strike; and (B) states the specific ground, unless it

---

[9] Kraus contends he "was not permitted to challenge" Plaintiff's testimony with the Amended Complaint. Doc. #679, at 27. Setting aside Kraus wanting to use allegations to challenge Plaintiff's testimony or correct the record, Kraus did not ask the Court – at during his examination of Plaintiff or anytime thereafter – to correct Plaintiff's testimony. While Kraus contends Plaintiff's counsel failed to correct the mistaken testimony, Kraus, who now claims the admission of testimony was in error, did not correct the testimony he elicited.

was apparent from the context…."  Fed. R. Evid. 103(a); *United States v. Yarrington*, 634 F.3d 440, 447 (8th Cir. 2011).  Because Kraus did not move to strike or otherwise raise a dispute with Plaintiff's testimony, he has not preserved the argument he asserts in the pending motion.

Even if he preserved the argument, it still fails.  Where the moving party complains about an evidentiary ruling, the court must determine whether the "ruling was so prejudicial as to require a new trial which would be likely to produce a different result."  *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1058-59 (8th Cir. 2005).  "Unless justice requires otherwise, no error in admitting or excluding evidence…is ground for granting a new trial…."  Fed. R. Civ. P. 61.

Immediately after Plaintiff testified, Kraus took the stand, and within minutes of beginning his testimony, Kraus declared, "I never had a fiduciary duty to Xurex."  Doc. #647, at 115.  To the extent Plaintiff's testimony confused or misled the jury, any misunderstanding was corrected by Kraus's testimony.  In addition, Plaintiff's single statement about Kraus having a fiduciary duty to Xurex, which was contrary to the other evidence presented to the jury, was not so prejudicial as to require a new trial.

When considering Plaintiff's testimony coupled with counsel's statement during closing argument and the allegedly "mistaken language" in two jury instructions, Kraus's arguments still fail.  First, Kraus did not object to Plaintiff's counsel's reference to "they" during his closing argument.  Regardless, counsel referring to "they" when discussing the jury instruction defining fiduciary duty did not indicate, in any way, that Kraus had a fiduciary duty to Xurex.  Instead, the instruction – and counsel's reference thereto – provided definitions for the jury when it considered the breach of fiduciary duty claims against Jose Di Mase, Giacomo Di Mase, Johnston, and Kaiser.  Counsel's reference to "they" in closing argument did not mislead the jury.

Regarding jury instructions, Kraus did not object to the "mistaken language" in the two instructions, and thus, has not preserved his instructional error arguments.  Fed. R. Civ. P. 51(c).  Regardless, neither Instruction No. 1 nor Instruction No. 29 contained mistaken language.  Instruction No. 1 provided a brief overview of this matter, including the two types of claims Plaintiff alleged.  Doc. #625, at 1.  The instruction did not detail which Defendant allegedly conspired and which allegedly breached his fiduciary duty.

Likewise, the introductory sentence to Instruction No. 29, the verdict director for Plaintiff's claim against Kraus, simply informed that the jury that it was to decide Plaintiff's claim against Kraus for "conspiracy to breach fiduciary duties to Xurex." *Id.* at 31. The sentence does not state or suggest Kraus had a fiduciary duty to Xurex.

When considering Plaintiff's testimony along with Plaintiff's counsel's use of the pronoun "they" during closing arguments and the language used in two instructions, the Court finds the testimony was not so prejudicial as to require a new trial. Further, the exclusion of Plaintiff's testimony would not have resulted in a different outcome in this matter. Accordingly, the Court denies Kraus's motion for new trial based on Plaintiff's testimony that Kraus had a fiduciary duty to Xurex.

### (2) <u>Jury Instructions</u>[10]

Kraus moves for a new trial due to instructional error. A new trial can be granted if there is instructional error that prejudices a party. *McKay v. WilTel Commc'n Sys., Inc.*, 87 F.3d 970, 975 (8th Cir. 1996). "A judgment will be reversed on the basis of instructional error only if the error affected the substantive rights of the parties. The test is whether the instructions given, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *Gasper v. Wal-Mart Stores, Inc.*, 270 F.3d 1196, 1200 (8th Cir. 2001) (internal citations and quotations omitted).

Kraus asserts Instruction No. 29 misapplied the law because the jury was "empowered…to find that Kraus entered into a conspiracy and acted to further it solely from drafting and executing the 2014 Amendment contract – which were two lawful acts," and the jury was not required "to find that any unlawful means were used by Kraus to undertake the lawful acts." Doc. #678, at 30-31. This argument fails for the same reasons Kraus's argument that he was entitled to motion for judgment as a matter of law on Plaintiff's civil conspiracy claim. *See supra*, section II(B)(2)(a).

---

[10] This section addresses Kraus's remaining arguments related to jury instructions. The Court does not reiterate its discussion of alleged "mistaken language" in Instructions 1 and 29. In addition, most of the instructional errors raised in Kraus's motion for new trial were not raised by him during trial.

Kraus also claims Instruction No. 29 failed to require the jury to find involvement of a third party in the conspiracy. During the instruction conference, Kraus argued the jury instructions failed to address "if a third party was involved" in the civil conspiracy. Doc. #647, at 13. After the instruction conference, the Court revised the jury instructions to include changes suggested by the parties. *Id.* at 147. Those revisions included an additional paragraph to Instruction No. 18:

> In these instructions, you are told how the law of civil conspiracy applies to this case. You are further instructed that a corporation cannot conspire with its own employees or agents unless the employee or agent has an independent personal stake in achieving the object of the conspiracy. An agent is a person or entity acting for and representing another by the latter's authority.

Doc. #625, at 20. This paragraph in Instruction No. 18, along with Instruction No. 29, largely incorporated the sole jury instruction that Kraus proposed. Doc. #589-1.

Nevertheless, Kraus contends "the jury should have been instructed to find and identify that a third party was in fact involved with the conspiracy." Doc. #691, at 29. Again, Kraus relies on *MHTC* but as explained above, that case differs from the one before the Court. *See supra*, section II(B)(2)(a). Additionally, Kraus points to no authority supporting his position that a jury must find and identify a third party involved in the conspiracy.

Kraus also claims the instructions were "confusing and inaccurate in other respects." Doc. #679, at 31. He argues Instructions 18 and 19 should have identified that he only owed a fiduciary duty to DuraSeal. Kraus contends the fourth paragraph in Instruction No. 29 "impos[ed] a confusing analysis," was contrary to the law, and should have required the jury to make an additional finding. *Id.* at 32. And Kraus asserts the fifth paragraph of Instruction 29 failed to identify the specific unlawful act in which he engaged or the unlawful means used to take a lawful act.

Finally, Kraus maintains the Court erred in failing to instruct the jury about the business judgment. Apart from whether entire fairness or the business judgment rule applied to the claim against Kraus, neither standard was at issue in the civil conspiracy instruction. Unlike the breach of fiduciary duty verdict directors, the civil conspiracy verdict director did not refer to "entire fairness" or ask the jury to make a finding about entire fairness. *Compare* Doc. #625, at 24, 26-27, 29-30, *with* Doc. #625, at 31.

The Court finds the jury instructions incorporated the applicable law, fairly and adequately submitted the issues to the jury, and to the extent any error occurred, the error did not affect Kraus's substantive rights. Accordingly, the Court denies Kraus's motion for new trial based on instructional error.

### (3)    Admission of Evidence

Next, Kraus moves for a new trial based on evidentiary errors. "Unless justice requires otherwise, no error in admitting or excluding evidence…is ground for granting a new trial…." Fed. R. Civ. P. 61. As stated above, where the moving party complains about an evidentiary ruling, the court must determine whether the "ruling was so prejudicial as to require a new trial which would be likely to produce a different result." *Moses.com*, 406 F.3d at 1058-59.

Kraus argues the Court improperly excluded evidence about "his state of mind and beliefs while working for DuraSeal in late 2013 and into 2014 while negotiating and entering into the 2014 Amendment." Doc. #679, at 34. He contends this evidence – the Tenaris report, John Lowry's statements, Kraus's testimony about whether Xurex products work, and the circumstances surrounding the indemnity agreement between Kaiser and DuraSeal – was relevant and admissible.

### (a)    Tenaris Report

During trial, the admissibility of the Tenaris report was discussed at length. Doc. #643, at 39-44. Kraus's pending motion reiterates the same arguments he made at trial. The Court stands by its decision to exclude the Tenaris report and testimony about the contents of the report. To the extent the Court erred in excluding the actual report, the decision to exclude the report was not so prejudicial as to require a new trial that would likely produce a different outcome.

### (b)    Lowry's Statements

Regarding John Lowry's first statement, Giacomo Di Mase began to testify about what John Lowry told him about the reason why John Appleton resigned from the Xurex board. Doc. #644, at 16. The Court sustained Plaintiff's hearsay objection. *Id.* Shortly

27

thereafter, Kraus obtained the information he sought when Giacomo Di Mase testified, "Mr. Appleton resigned because he didn't see a future in the company." *Id.* at 17.

Regarding Lowry's second statement, Kraus asked Giacomo Di Mase if Lowry made a "comment that he was feeling blamed for the product." *Id.* at 20. For Lowry's third statement, Giacomo Di Mase began to testify about something Lowry said. Doc. #646, at 186. The Court sustained counsel's hearsay objections to both statements. Kraus argues Lowry's statements were "intended to show the then-existing state of mind of DuraSeal representatives based on what they were hearing and believing at the time…." Doc. #679, at 35. These statements do not satisfy an exception to the hearsay rule, and even if they did, it is unclear how the statements would have been relevant to the civil conspiracy claim against Kraus. In any case, the exclusion of these statements is not so prejudicial as to require a new trial. *Moses.com*, 406 F.3d at 1058-59.

### (c)    Indemnity Agreement

Kraus argues the Court erred in prohibiting him from eliciting certain testimony from Kaiser about his indemnity agreement with DuraSeal. When Kraus questioned Kaiser about his indemnity agreement, Kaiser referenced a directors and officers ("D&O") insurance policy. Doc. #644, at 48. The Court directed Kaiser not to testify about whether there was insurance because it was not at issue. *Id.* At the bench conference that followed, Kraus claimed there were differences between the 2012 and 2013 indemnification agreements, including that the D&O insurance policy was "directly related" to the latter agreement. *Id.* at 49. The Court permitted Kraus to ask about the indemnification agreement but prohibited him from asking about insurance. *Id.* [11]

In the pending motion, Kraus claims testimony about the insurance policy "was necessary to combat a misleading and erroneous interpretation of the agreement advanced by Plaintiff." Doc. #679, at 36. Although he was prohibited from discussing

---

[11] Before trial, Plaintiff moved to exclude evidence about insurance with one limited exception. In response, Kraus argued evidence about insurance should be permitted because "Plaintiff spent a staggering amount of time and effort during discovery…about insurance coverage," and Plaintiff allowed Xurex's D&O policy to expire under his watch. The Court granted the motion in limine and prohibited the parties from presenting evidence about D&O insurance policies. Doc. #511, at 18.

the D&O policy, Kraus was still able to elicit testimony about the differences between the 2012 indemnification agreement and the 2013 indemnification agreement.  Doc. #644, at 11-14.  Although Kraus claims he needed to correct Plaintiff's misleading comparisons between the two indemnification agreements, Kraus did not raise an objection to Plaintiff's supposedly misleading comparison between the agreements. Doc. #643, at 174-76.

Regardless, Kraus does not establish D&O insurance is relevant – that is, he has not shown D&O insurance "has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."  Fed. R. Evid. 403.  Even if it were relevant, any probative value would have been substantially outweighed by the danger of unfair prejudice or confusion.  Fed. R. Evid. 403.  Accordingly, the Court finds the exclusion of D&O insurance is not so prejudicial as to require a new trial.  *Moses.com*, 406 F.3d at 1058-59.

### (4)  Award of Damages

Kraus argues a new trial is warranted because the jury awarded excessive and unreasonable damages based on Robert Reilly's testimony, which, according to Kraus, should have been excluded.  Kraus contends Reilly's testimony should not have been admitted because (1) his opinion as to damages caused by the 2014 Amendment ignored and conflicted with the 2012 Amendment, (2) his opinion was "wildly speculative and ignored commercial realities," and (3) he ignored the language in the 2012 Amendment giving DuraSeal the right to terminate the agreement.  Doc. #679, at 40-47. Kraus, along with the other Defendants, raised these arguments in his *Daubert* motion, which the Court denied.  Doc. #356; Doc. #434-1, at 24-33.  The Court will not repeat its analysis here and stands by its prior decision.

In response to Kraus's motion, Plaintiff highlights Kraus stipulated to the admissibility of Reilly's report, and thus, has waived his argument that Reilly's testimony should have been excluded.  In addition, Plaintiff argues Kraus did not object to Reilly testifying about how and why he included both penalties and minimum purchases in his report.  When he cross-examined Reilly, Kraus did not ask Reilly about his penalty

29

opinions.  Finally, after the verdict was returned, Kraus did not raise an issue with the jury's damages award.

Parties' agreements to waive evidentiary rules "are generally enforceable even over a party's subsequent objection."  *United States v. Mezzanatto*, 513 U.S. 196, 202 (1995) (citation omitted).  As the Supreme Court noted, "evidentiary stipulations are a valuable and integral part of everyday trial practice.  Prior to trial, parties often agree in writing to the admission of otherwise objectionable evidence, either in exchange for stipulations from opposing counsel or for other strategic purposes."  *Id.* at 203.  "[T]he Federal Rules of Civil Procedure…appear to contemplate that the parties will enter into evidentiary agreements during a pretrial conference."  *Id.* (citations omitted).  "At any pretrial conference, the court may consider and take appropriate action on…obtaining admissions and stipulations about facts and documents to avoid unnecessary proof…."  Fed. R. Civ. P. 16(c)(2)(C).  Because Kraus stipulated to the admissibility of Reilly's report before trial, he waived any subsequent objection to the report being admitted.

Likewise, Kraus's failure to raise an objection to Reilly's testimony at trial prevents this Court from considering this basis of Kraus's motion for new trial unless there is plain error.  *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1407-08 (8th Cir. 1994).  The Court finds the admission of Reilly's testimony did not constitute plain error.  Thus, Kraus's objection to the admissibility of Reilly's testimony is waived.  *See Waitek v. Dalkon Shield Claimants Tr.*, 934 F. Supp. 1068, 1093 (N.D. Iowa 1996), *aff'd,* 114 F.3d 117 (8th Cir. 1997).  Finally, Kraus did not raise an issue with regard to the jury's verdict during trial.  For these reasons, Kraus's motion for new trial based on Reilly's testimony being admitted is denied.

### (5)    Entire Fairness Doctrine

Kraus argues he is entitled to a new trial because the entire fairness doctrine does not apply to contract amendments.  His argument, however, misses the point.  Plaintiff alleged a claim of civil conspiracy, not breach of fiduciary duty, against Kraus.  In the verdict director for this claim, there was no reference to entire fairness, and the jury was not asked to make a finding about entire fairness.  Doc. #625, at 31.  Thus, if and whether the entire fairness doctrine or the business judgment rule applies was not a

30

determination made by the jury.  Accordingly, the Court denies Kraus's motion for new trial based on the purported application of the entire fairness doctrine.

### (6)  Pretrial Decision Regarding Applicable Standard

Next, Kraus contends the Court erred in not issuing a decision before trial as to whether the entire fairness doctrine or the business judgment rule applied.  For the same reasons stated *supra*, section III(B)(5) the Court denies Kraus's motion for new trial on this basis.

### (7)  Cumulative Error

Finally, Kraus requests a new trial "based on the cumulative effect of the above-cited errors."  Doc. #679, at 52.  Kraus provides no additional argument and cites to a decision issued by the United States District Court for the Northern District of Illinois.  *Id.* Nonetheless, the Court finds this argument fails because the alleged errors, alone or cumulatively, do not warrant a new trial because the outcome in this matter was not against the "great weight of the evidence so as to constitute a miscarriage of justice. *Bank of Am.*, 766 F.3d at 851.  Accordingly, the Court denies Kraus's motion for new trial based on cumulative error.

### IV.  MOTION TO CERTIFY JUDGMENT

Also pending is Plaintiff's motion to certify the judgment against Kraus in the United States District Courts for the Districts of Kansas and Connecticut.  Kraus opposes Plaintiff's motion.

"A judgment in an action for the recovery of money or property entered in any…district court…may be registered by filing a certified copy of the judgment in any other district…when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown."  28 U.S.C. § 1963.  No appeal has been filed in this matter, and the time to file an appeal has not run due to Kraus's filing of a motion for judgment as a matter of law or new trial.  Fed. R. App. P. 4(a)(4)(A)(i), (v).  For the Court to certify the judgment against Kraus, there must be "good cause."  Plaintiff argues "good cause" exists for the

Court to certify the judgment because Kraus has assets in other district courts. Neither party cites to an Eighth Circuit decision addressing this issue.

Courts disagree as to whether a motion to register a judgment before an appeal has been filed is premature. For example, the United States District Court for the Eastern District of Missouri determined such a motion could only be filed during the pendency of an appeal. *Educ. Emps. Credit Union v. Mut. Guar. Corp.*, 154 F.R.D. 233, 235 (E.D. Mo. 1994). But other courts, such as the United States District Court for the Eastern District of Pennsylvania, have granted such motions before an appeal was filed. *Great Am. Ins. Co. v. Stephens*, No. CIVA 04-3642, 2006 WL 2349991, at *2 (E.D. Pa. Aug. 11, 2006).

In addition, because the statute does not define "good cause," courts are split on what constitutes "good cause." The Court notes most courts have determined the absence of assets in the judgment jurisdiction and presence of assets elsewhere sufficiently establish good cause under section 1963. *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197-98 (9th Cir. 2001); *Chicago Downs Ass'n, Inc. v. Chase*, 944 F.2d 366, 371-72 (7th Cir. 1991); *Creative Am. Educ. v. Learning Experience Sys., LLC*, No. 914CV80900, 2015 WL 5118111, at *2 (S.D. Fla. Sept. 1, 2015); *3M Co. v. Mohan*, No. CIV. 09-1413, 2011 WL 2441213, at *1 (D. Minn. June 17, 2011); *Hicks v. The Cadle Co.*, No. 04CV02616, 2009 WL 189938, at *2 (D. Colo. Jan. 27, 2009). While the "absence of assets in the judgment forum, coupled with the presence of substantial assets in the registration forum" may establish good cause, some courts have held registration of the judgment "should be deferred until after the judgment debor refuses or fails to post a supersedeas bond." *See Cheminova A/S v. Griffin L.L.C.*, 182 F. Supp. 2d 68, 80 (D.D.C. 2002) (citations omitted). Finally, some courts have concluded the presence of assets in other jurisdictions alone is not sufficient to establish good cause. *See Blaine Larsen Processing, Inc. v. Hapco Farms, Inc.*, No. CIV.97-0212, 2000 WL 35539979, at *14-15 (D. Idaho Aug. 9, 2000).

In this matter, Kraus does not have assets in Missouri. His assets are in the United States District Courts for the District of Kansas and the District of Connecticut. The Court provided Kraus the opportunity to stay execution of the judgment so long as

Kraus obtained and filed a $2,000,000 bond and consented to the tolling of the statute of limitations applicable to fraudulent transfer claims asserted by Plaintiff. Doc. #683. Kraus did not file a bond, and the time for doing so has passed. *Id.* In addition, if the Court does not certify the judgment, it is unknown what would occur to Kraus's assets in the meantime. Based on these facts, the Court finds Plaintiff has established good cause to certify the judgment. Therefore, the Court grants Plaintiff's motion to certify the judgment in the United States District Courts for the District of Kansas and the District of Connecticut.

## V.    CONCLUSION

For the foregoing reasons, the Court denies Defendant Kraus's motion for judgment as a matter of law and his alternative request for new trial, and the Court grants Plaintiff's motion to certify the judgment against Defendant Kraus in the United States District Courts for the Districts of Kansas and Connecticut.

IT IS SO ORDERED.

/s/ Ortrie D. Smith

DATE:  July 31, 2020                      ORTRIE D. SMITH, SENIOR JUDGE
                                          UNITED STATES DISTRICT COURT